IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01897-PAB-CBS

OTO SOFTWARE, INC., a Texas corporation,
        Plaintiff,
v.

HIGHWALL TECHNOLOGIES, LLC, a Florida limited liability company;
RICH SWIER; and
MOBILESECURE, INC., a Massachusetts corporation;
        Defendants.

---

## ORDER and RECOMMENDATION ON PENDING MOTIONS

---

Magistrate Judge Shaffer

        PENDING before the court are Plaintiff OTO Software, Inc.'s ("OTO") Motion for

Sanctions for Admitted Destruction of Evidence (doc. # 54), filed on November 6, 2009. This

motion contends that Defendants Highwall Technologies, LLC, ("Highwall"), Rich Swier, and

MobileSecure, Inc. ("MobileSecure") destroyed documentation concerning the parties' original

dispute over royalties due on a transaction between Highwall and the Federal Deposit Insurance

Corporation, and Highwall's subsequent hiring of Excellone, a company in India, to

independently develop software. Defendants Highwall and Swier did not respond to the Motion

for Sanctions for Admitted Destruction of Evidence. Defendant MobileSecure filed a Response

in Opposition (doc. # 59) on November 25, 2009. Plaintiff OTO filed a Reply (doc. # 60) on

December 9, 2009. Following a telephone hearing on June 8, 2010, the court invited the parties

to file supplemental briefs relating to Plaintiff's motion for sanctions. OTO filed a Supplemental

Brief (doc. # 99) on June 18, 2010, and MobileSecure submitted a Response to Plaintiff's

Supplemental Brief (doc. # 100) on June 28, 2010.

Also pending before the court is Defendant MobileSecure's Motion for Summary Judgment (doc. # 56) and Brief in Support (doc. # 57), filed on November 20, 2009. In its motion, MobileSecure argued, in part, that Plaintiff "will not be able to show that there is anything in the OTO Software that is copyright protectable because it did not designate an expert to assist the fact finder with the Abstraction-Filtration-Comparison Test" commonly applied in computer software copyright cases. In response to this argument, OTO moved on December 22, 2009 to Amend Scheduling Order to Allow Designation of Fed. R. Civ. P. 26(a)(2)(A) Witness (doc. # 66). As OTO explained in its motion, "[i]n preparing its Response to MobileSecure's summary judgment motion, Plaintiff became aware of its inadvertent mistake in never formally designating Mr. [Todd] Rogers as a witness under Rule 26(a)(2)(A)." Anticipating MobileSecure's response to this belated designation, Plaintiff insisted that "Defendants are well aware of this witness, possess copies of his work product, and have known that he will be a witness in the trial of this matter." Notwithstanding the arguments raised in MobileSecure's Response in Opposition (doc. #75), on January 27, 2010, I granted Plaintiff's motion to amend the scheduling order and directed OTO to serve Mr. Rogers' signed expert report on or before February 8, 2010.

Plaintiff OTO filed a Response Brief in Opposition to MobileSecure's Motion for Summary Judgment (doc. # 73) on December 30, 2009. MobileSecure filed its Reply in Support of Motion for Summary Judgment (doc. # 76) on January 15, 2010. Plaintiff OTO tendered an Unopposed Motion for Leave to File Supplemental Response Re: Summary Judgment (doc. # 90) on March 9, 2010, which was granted on March 11, 2010. On March 22, 2010, OTO filed its

Supplemental Response Re: Defendant MobileSecure, Inc.'s Motion for Summary Judgment

(doc. # 93), and MobileSecure submitted a Reply to Plaintiff's Supplemental Response (doc. #

94) on April 26, 2010.[1]

With separate Orders of Reference (doc. ## 4 and 71) entered on September 10, 2008 and

December 30, 2009, this matter was referred to the Magistrate Judge to, *inter alia*, "hear and

determine pretrial matters, including discovery and non-dispositive motions," and "conduct

hearings . . . and submit proposed findings of fact and recommendations for rulings on

dispositive motions." The court has carefully reviewed the pending motions and related briefs

and exhibits, the entire case file and the applicable case law. In the exercise of my discretion

pursuant to D.C.COLO.LCivR 7.1G, I do not believe that oral argument would not be helpful to

the court's understanding or analysis of the pending motions.

## FACTUAL BACKGROUND

For purposes of the pending motions, the following facts are material and apparently

undisputed.[2]

---

[1]Plaintiff OTO filed an Amended Motion for Summary Judgment Against Highwall
Technologies, LLC and Rich Swier (doc. # 70) on December 29, 2009. OTO elected to
withdraw this Amended Motion without prejudice on June 8, 2010, in favor of its Motion for
Clerk's Entry of Default and Default Judgment (doc. # 95) filed against Highwall and Swier on
May 10, 2010. This court will address the latter motion in a separate Recommendation.

[2]These "undisputed" facts are gleaned from the parties' briefing on MobileSecure's
Motion for Summary Judgment, as well as MobileSecure's Response to OTO's Amended
Motion for Summary Judgment Against Highwall Technologies, LLC and Rich Swier (doc. #
79), filed on January 22, 2010. Although Plaintiff subsequently moved to withdraw without
prejudice its Amended Motion for Summary Judgment against Highwall and Swier (doc. # 98),
the court may take judicial notice of its own records and files in deciding a motion for summary
judgment, and may also consider stipulations and concessions of counsel. *See St. Louis Baptist
Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979).

Prior to March 15, 2005, OTO created and designed its "Wi-Fi Defense 2.0" software (hereafter "OTO Software") to provide security to laptop and mobile computers, as well as WI-FI networks, from unauthorized intrusions. *See* Scheduling Order (doc. # 21), at 5. This software was developed by Todd Rogers, who also was a co-founder of OTO. Plaintiff registered a copyright in the OTO Software on July 7, 2008. *See* MobileSecure's Brief in Support of Motion for Summary Judgment (doc. # 56), at 4, ¶ 4, and Plaintiff's Response Brief in Opposition (doc. # 73), at 4, ¶ 4.

On or about March 15, 2005, Plaintiff entered into a Software Private Label License Agreement with Defendant Highwall Technologies, LLC, pursuant to which Highwall agreed to pay OTO a monthly royalty of 75% of revenues (as defined in the License Agreement) generated from sales of copies of OTO Software. The Software Private Label License Agreement permitted Highwall to sell the OTO Software under its own brand name - either Highwall Personal or Highwall Endpoint. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), p. 3, ¶¶ 4 and 6, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79) at 2, ¶¶ 4 and 6.

On or about December 14, 2005, Highwall executed a Purchase Order Agreement with the FDIC, under which the FDIC agreed to purchase 3,500 copies of OTO Software under Highwall's private-label name, "Highwall Personal." *See* Plaintiff's Amended Motion for Summary Judgment (doc # 70), at p. 3, ¶¶ 8 and 9, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 2, ¶¶ 8 and 9. Under the terms of the Purchase Order Agreement, the FDIC was obligated to pay Highwall $98,000, which OTO contends should have resulted in a royalty payment of $73,500. However, Rich Swier,

Highwall's President, advised OTO that the FDIC only purchased $20,000 worth of copies of the OTO Software. It is undisputed that OTO and its President, Chris Basham, never saw the FDIC purchase order. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at p. 4, ¶¶ 11 and 12, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 2, ¶¶ 11 and 12.

In July 2006, OTO raised questions concerning the FDIC transaction. In an email dated July 11, 2006, OTO's acting counsel suggested his client was "owed a substantial amount of money" and was "counting on [Highwall] to make things right." *See* Exhibit A attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54). In an e-mail response sent the same day, Mr. Swier advised OTO's counsel that

> [Highwall's] product which is called Highwall Endpoint includes both SERVER SOFTWARE and AGENT Software. OTO only provides the AGENT SOFTWARE. Which we sold at the maximum price of 30k Enterprise License. The other costs were for the service license for Highwall Enterprise. I will be happy to furnish invoices for all sales made of our products which include OTO software. As a final note – I don't appreciate the accusations, and the game you are playing, so we will be canceling your contract immediately, and have no further use for OTO software.

*See* Exhibit C attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54).

In a follow-up email on July 11, 2006, OTO's counsel asked that Highwall "furnish the license agreement for the server software and program descriptions and evidence that the license fee for your server software license fee to the FDIC was $78K as you stated in your email." OTO's counsel responded to Mr. Swier's email by specifically asking for "any evidence you might have that anything was furnished to the FDIC and [OTO's] other customers." Counsel suggested that if the requested documentation substantiated Highwall's position, "we won't be at

odds; if not you owe us some money." *Id.* Yet again, on July 12, 2006, counsel for OTO asked

Mr. Swier and his colleagues to provide documentation supporting Swier's assertions regarding

the FDIC transaction, as well as "[x]erozed copies of all invoices sent to end users of OTO

software whom Highwall licensed." *See* Exhibit E attached to Plaintiff's Motion for Sanctions

for Admitted Destruction of Evidence (doc. # 54).

As the FDIC dispute continued to fester, OTO's outside attorney noted in an August 29,

2006 letter to Highwall's counsel that Highwall

> does not refer to or provide a single document signed on or on behalf of FDIC
> that mentions any service or product other than the items described in the
> purchase order. Further, OTO has reason to believe that no person who was
> actively involved in the transaction will corroborate Highwall's contention that
> any services or products other than those reflected in the purchase order were
> performed or supplied. . . . Finally, Highwall and its management need to
> understand that OTO does not intend to engage in further unproductive exchanges
> of letters and e-mails. Unless payment or a substantive response to Mr. Roger's
> challenge is received by September 12, 2006, it is OTO's present intention to file
> a lawsuit in Texas against Highwall, Mr. Swier . . . and any others who may be
> liable for fraud. If a lawsuit is filed, it will probably be filed without further
> comment or warning.

*See* Exhibit F attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence

(doc. # 54).

Highwall's outside counsel responded on September 5, 2006, saying that his client was

"contacting the FDIC in order to secure a letter confirming all products and services received for

which Highwall was paid fees in addition to the cost of the OTO software." In the same letter,

Highwall's attorney asked that OTO "refrain from taking any precipitous and unjustified action

until I have a reasonable opportunity to review that documentation and deliver it to you which I

intend to do promptly upon my return to the office [on September 4, 2006]." *See* Exhibit H

attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54).

When Highwall's promised documentation failed to materialize, OTO's outside counsel warned on September 19, 2006 that "[i]f I do not receive supporting documentation by 4:00 p.m. Houston time tomorrow, I will assume none exists, and will proceed accordingly." *See* Exhibit G attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54). Highwall's attorney wrote again on September 20, 2006, assuring OTO of Highwall's "ongoing efforts to address [OTO's] concern" and promising that 'Highwall will continue its efforts to provide the referenced documentation." *See* Exhibit I attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54).

On September 26, 2006, OTO's counsel sent a letter to Highwall's attorney and Duncan Mackay of MobileSecure, Inc. In this letter, OTO's counsel acknowledged MobileSecure's recent acquisition of Highwall and Mr. Swier's new position as a MobileSecure employee. In the same letter, OTO noted that MobileSecure's website seemed to be "actively marketing the software product that is the subject of the March 2005 Software Private Label License Agreement between OTO Software, Inc. and Highwall Technologies, LLC, leading OTO to conclude that MobileSecure now believes that it has assumed Highwall's rights and obligations under the Agreement." Counsel concluded his letter by stating

> As Highwall knows, Highwall has refused for months now to provide certain
> requested information regarding its sales of the product, and has breached its
> obligations under Section 6 of the Agreement. Therefore, pursuant to Article 7.2
> of the Agreement, OTO hereby provides written notification of its termination of
> the Agreement, effective immediately.

*See* Exhibit J attached to Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54).

In the midst of the continuing dispute with OTO Software over royalties associated with

the FDIC transaction, Highwall entered negotiations to sell certain of its assets to MobileSecure. Swier met with MobileSecure's President, Duncan Mackay, in June or July of 2006. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at 7, ¶¶ 37 and 39, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 5, ¶¶ 37 and 39. During the course of negotiations, Mackay was told that Highwall did not own the OTO Software, which was incorporated in Highwall Endpoint. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at 7, ¶¶ 41 and 46, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 5, ¶¶ 41 and 46. It was understood that the OTO Software would not be included in the MobileSecure acquisition. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at 8, ¶¶ 46 and 47, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 5, ¶¶ 46 and 47.

Swier told Mackay there were disputes between OTO and Highwall regarding royalty payments, that the relationship had deteriorated to the point it was no longer working, and that Swier had canceled the relationship with OTO. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at 12, ¶ 87, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 8, ¶ 87. Mr. Mackay has testified that he advised Defendant Swier that "it was really not appropriate for [MobileSecure] to be acquiring technology in a contract where there was a clear dispute which I couldn't really tell if there was any merit to the dispute or not" and that the impending deal with Highwall would have to change "because, you know, we would not be acquiring as much." *See* Exhibit A, at 101, attached to MobileSecure's Response in Opposition to Motion for Sanctions (doc. # 59). Swier said that he

ended the Software Private Label License Agreement with OTO around June 2006 and was already planning to replace the OTO product. *See* Exhibit 3, at 43 and 44, attached to Plaintiff's Amended Motion for Summary Judgment (doc. # 70).

On June 21, 2006, Rich Swier, on behalf of Highwall, executed a Software Development and Consulting Agreement with Excellone. Under the terms of that Agreement, Excellone agreed to "perform such consulting, advisory, software architectural design, implementation, and testing services to and for [Highwall] as requested by [Highwall]." The Agreement further stated that Excellone was "assign[ing], and transferr[ing] to [Highwall], [its] successors and assigns, the entire right, title and interest in and to the copyright in the software that is developed on [its] behalf." *See* Exhibit 3 attached to MobileSecure's Brief in Support of Motion for Summary Judgment (doc. # 57).

Mr. Mackay testified that MobileSecure's acquisition of Highwall closed on August 2, 2006. *See* Exhibit 4 at 75, attached to Plaintiff's Amended Motion for Summary Judgment (doc. # 70). Following the acquisition, Highwall became a 40% stockholder of MobileSecure and Rich Swier joined MobileSecure's board of directors. *See* Plaintiff's Amended Motion for Summary Judgment (doc. # 70), at 5, ¶ 27, and MobileSecure's Response to Plaintiff's Amended Motion for Summary Judgment (doc. # 79), at 4, ¶ 87. OTO disputes MobileSecure's contention that it never sold the OTO Software product and never sold any of the Highwall Endpoint product after August 2006.

Plaintiff's Complaint (doc. # 1) asserts six claims for relief. OTO's First and Fifth Claims for Relief are brought against Defendants Highwall, Swier and MobileSecure, and allege copyright infringement and unfair competition and false designation of origin pursuant to 15

U.S.C. § 1125(a).  The Second Claim for Relief and Third Claim for Relief allege breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, against Highwall  The Fourth Claim is brought against Highwall and Swier for fraud, and the Sixth Claim for unjust enrichment is brought against Highwall and MobileSecure.

MobileSecure denies any wrongful conduct involving OTO or Plaintiff's software. According to MobileSecure, it purchased only certain assets from Highwall and specifically refused to include the OTO software as part of the acquisition.  MobileSecure insists that it never had access to OTO's source code and, therefore, never had the ability to copy Plaintiff's product.

Highwall and Swier have taken the position that OTO received all the royalties owed under the parties' Private Label License Agreement.  *See* Scheduling Order (doc. # 21, at 4). Defendants Highwall and Swier claim that they "hired a completely unrelated company from overseas – Excellone –  to produce from scratch a computer program with similar functionality to that of Plaintiff, but with more features.  The functionality found in Plaintiff's product was already available from several others in the market, is not protectable intellectual property, and was not protected by Plaintiff or anyone else."  *Id.*

**ANALYSIS**

A.     *Plaintiff's  Motion for Sanctions for Admitted Destruction of Evidence*

In moving for sanctions, OTO argues that Defendants' destruction of relevant evidence is

undisputed.  Plaintiff contends that in response to written discovery, Defendants Swier and

Highwall failed to produce business records showing delivery of product by Highwall to the

FDIC, records showing proof of payment by the FDIC, or any other business records relating to

the FDIC transaction.  OTO also asserts that all Defendants, including MobileSecure, failed to

produce any documents pertaining to the consulting agreement with Excellone, including project

proposals, project specifications, correspondence between Excellone and any of the Defendants,

or records reflecting payments, delivery of product, or statements of deliverables.  In light of

defense counsel's representation that Defendants "no longer have the documents [OTO]

request[ed]," Plaintiff concludes that Defendants must be guilty of spoliation and requests

sanctions in the form of

> adverse inference instructions, together with orders to preclude the Defendants
> from testifying (1) that they sold the FDIC anything of value other than OTO's
> software pursuant to the license agreement, (2) that Defendants hired Excellone to
> develop a software product which was not copied from OTO's product, but
> instead was developed independently without violation of the copyright, (3) that
> the product advertised as OnEdge Wireless by MobileSecure was not a pirated
> copy of OTO's software, and (4) that Enterprise was bundled with the OTO
> software program.[3]

Defendant Swier and Highwall have never responded to Plaintiff's pending motion for

sanctions.  Defendant MobileSecure insists that it had no duty to preserve relevant evidence prior

---

[3]Based upon the court's reading of the factual record, the reference to "bundling" of
Enterprise and the OTO software program appears to relate to Highwall's transaction with the
FDIC.

to the filing of the instant lawsuit and that MobileSecure cannot be held accountable for Highwall's and/or Swier's failure to preserve.

In its supplemental briefing, OTO takes the position that as of August 1, 2006, Highwall owned a substantial interest in MobileSecure, Defendant Swier was a member of MobileSecure's board of directors and on MobileSecure's payroll. OTO further argues that "[a]ny and all business records created after August 1 concerning the Excellone relationship, product development, and software delivery created after August 1, 2006, is the responsibility of MobileSecure," as is any destruction of those same business records that occurred after that date.

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). To ensure that the discovery permitted by Rule 26(b)(1) does not become a futile exercise, putative litigants have a duty to preserve documents or materials that may be relevant to potential future litigation. *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation"). "Spoliation" has been defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *See, e.g., West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). *See also United States v. Koch Industries, Inc.*, 197 F.R.D. 463, 482 (N.D. Okl. 1998) (acknowledging a litigant's duty "to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation").

Without question, the court has inherent power to impose sanctions for the destruction or loss of evidence. *See, e.g., Millsap v. McDonnell Douglas Corp.*, 162 F. Supp.2d 1262, 1309 (N.D. Okla. 2001). *See also Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 631 (D. Utah 1998) (recognizing a court's inherent power and authority under Fed. R. Civ. P. 37(b)(2) to sanction a litigant "who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information"), *judgment aff'd in part and rev'd in part on other grounds*, 222 F.3d 1262 (10th Cir. 2000). "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington Northern and Santa Fe Railway Co. v. Grant,*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 989 (10th Cir. 2006)). In exercising its discretion to fashion an appropriate sanction, the court must consider the culpability of the responsible party and whether the evidence was relevant to prove an issue at trial. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862-63 (10th Cir. 2005) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)). The party seeking sanctions has the burden of proving the essential elements of a spoliation claim. *Cf. Ernest v. Lockheed Martin Corp.*, 2008 WL 2945608, at *1 (D. Colo. 2008); *Ramirez v. Pride Development & Construction*, 244 F.R.D. 162, 164 (E.D.N.Y. 2007).

1.    Duty to Preserve

To sustain its burden of persuasion, a party seeking spoliation sanctions must show that the party to be sanctioned had control of the materials in question and a duty to preserve that evidence at the time it was destroyed or lost. *Cf. Arista Records LLC v. Usenet.Com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009). "Identifying the boundaries of the duty to preserve [evidence] involves two related inquiries: *when* does the duty to preserve attach, and what evidence must be preserved." *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). In most cases, the duty to preserve evidence is triggered by the filing of a lawsuit. However, the obligation to preserve evidence may arise even earlier if a party knows or should have known that the material may be relevant to future litigation. *Cf. Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (the obligation to preserve evidence arises when a party should have known), *overruled on other grounds by Rotella v. Wood,* 528 U.S. 549 (2000). *See also Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000) (a party's obligation to preserve evidence arises when it has notice of the evidence's relevance to litigation "likely to be commenced").

The duty to preserve must be applied in an objectively reasonable manner consistent with the goals of "leveling the playing field" and redressing abuse of the judicial process. *See Pension Committee v. Banc of America Securities, LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010); *Mosaid Technologies Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). *Cf. Jones v. Bremen High School District 228*, 2010 WL 2106640, at *6 (N.D. Ill. 2010) (noting that "reasonableness is the key to determining whether or not a party breached its duty to preserve evidence"); *Spinelli v. Monumental Life Ins. Co.*, 476 F. Supp. 2d 898, 912 (N.D. Ill.

2007) ("A duty exists for a potential litigant to take reasonable measures to preserve relevant, material evidence.").  As Judge Rosenthal correctly noted in *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)

> It can be difficult to draw bright-line distinctions between acceptable and unacceptable conduct in preserving information and in conducting discovery, either prospectively or with the benefit (and distortion) of hindsight. Whether preservation or discovery conduct is acceptable in a case depends on what is *reasonable,* and that in turn depends on whether what was done-or not done-was *proportional* to that case and consistent with clearly established applicable standards.[4]

Although the duty to preserve must be applied in light of the particular circumstances of the case at hand, judicial precedent provides some guidance.  For example, it is generally accepted that a litigant's duty to preserve does not obligate that party to retain every document in its possession.  *See, e.g., Danis v. USN Communications,* Inc., 2000 WL 1694325, at *30 (N.D. Ill. 2000); *William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984).  The duty to preserve also presumes that the organization or individual possessing the evidence has notice of the imminent litigation and the relevance of the information.  *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72-72 (S.D.N.Y. 1991).  *Compare Scalera v. Electrograph System, Inc.,* 262 F.R.D. 162, 172 (E.D.N.Y. 2009) (declining to find that plaintiff's filing of a worker's compensation claim put the defendant employer on notice that the employee thereafter would be filing a disability discrimination lawsuit).  In complying with its duty to preserve relevant evidence, a litigant "is not expected to be prescient."  *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. Apex. 796, 804 (10th Cir. 2009).  Finally, case law recognizes that an

---

[4]*See also* Hon. Paul W. Grimm, Michael D. Berman, Conor R. Crowley & Leslie Warton, *Proportionality in the Post-Hoc Analysis of Pre-Litigation Preservation Decisions,* 37 U. Balt. L. Rev. 381 (Spring 2008).

organization-wide duty to preserve does not arise simply because one or two employees contemplate the possibility of litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 217. *See also Toussie v. County of Suffolk*, 2007 WL 4565160, at *6 (E.D.N.Y. 2007) (holding that while a handful of employees may have contemplated the possibility of litigation, there was no evidence to suggest that a substantial number of key personnel anticipated litigation prior to the filing of the complaint; therefore, the municipality's duty to preserve did not arise until the complaint was filed).

With respect to OTO's claims arising from Highwall's transaction with the FDIC, I conclude that certainly by July 11, 2006, Highwall and Swier had a duty to preserve evidence pertaining to that transaction. On July 11, 2006, Plaintiff's outside counsel put Highwall on notice that OTO was disputing Highwall's characterization of the FDIC transaction and asserting OTO's right to a "substantial amount of money." In response to OTO's request for documentation, Mr. Swier said he would "be happy to furnish invoices for all sales made of [Highwall's] products which include OTO Software." However, in the same e-mail Swier cited OTO's "accusations" and "the game [OTO was] playing" as justification for immediately canceling the Software Private Label License Agreement with OTO. Given the confrontational tenor of the July 11 exchange, Highwall and Swier should have understood that OTO was expecting payment and demanding production of relevant documents, and that the parties were on a path that made litigation relating to the FDIC transaction "more than a possibility." *See Hynix Semiconductor Inc. v. Rambus, Inc.*, 591 F. Supp. 2d 1038, 1061 (N.D. Cal. 2006).

Plaintiff's motion for sanctions does not appear to seek spoliation sanctions against MobileSecure for the destruction of documents pertaining to the FDIC transaction. More to the

point, I cannot find on the record before the court that MobileSecure had a duty to preserve such records prior to the filing of the instant lawsuit on September 4, 2008. If I credit Mr. Swier's deposition testimony, Mr. Mackay knew in August 2006 that OTO and Highwall were embroiled in a dispute concerning unpaid royalties. OTO's counsel confirmed that information with a letter to Highwall and MobileSecure on September 26, 2006 which noted Highwall's continued refusal "to provide requested information regarding its sales of [OTO Software]" and alleged Highwall's breach of the parties' Software Private Label License Agreement. Yet well before the September 26 letter was received, Mr. Mackay had informed Highwall that MobileSecure was not interested in any acquisition that included OTO's product or software, and had received Swier's assurance that Highwall had ended the Software Private Label License Agreement with OTO.

The court has not been provided with any evidence to suggest that as part of the Highwall acquisition, MobileSecure was assuming liability for Highwall's past obligations. Moreover, there is no evidence in the record to suggest that MobileSecure had either the legal authority or practical ability to ensure the preservation of records relating to the FDIC transaction. *Cf.* *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 516 (D. Md. 2009) (concluding that the duty to preserve does not extend to documents which a party has no legal authority or practical ability to preserve). Under these circumstances, I cannot conclude that MobileSecure had a duty to preserve materials relating to Highwall's transaction with the FDIC prior to September 4, 2008.[5]

Defendants' obligation to preserve documents and materials relevant to Highwall's

_____

[5]The court also notes that documents pertaining to the FDIC transactions would only be relevant to Plaintiff's Second, Third and Fourth Claims for Relief which are directed against Highwall and/or Swier.

agreement with Excellone is a different and more difficult question. On September 26, 2006,

OTO's counsel wrote to both MobileSecure and Highwall, expressing concern that

MobileSecure appeared to be "actively marketing the software product that is the subject of the

March 2005 Software Private Label License Agreement between OTO Software, Inc. and

Highwall Technologies, LLC, leading OTO to conclude that MobileSecure now believes that it

has assumed Highwall's rights and obligations under the Agreement." In the same letter, OTO

provided "written notification of its termination of the Agreement [with Highwall], effective

immediately." While this letter clearly directed MobileSecure and Highwall to cease their use of

the OTO Software, the impetus for the September 26 letter was Highwalls's continued refusal

"to provide certain requested information regarding its sales of the product" and Highwall's past

breach of "its obligations under Section 6 of the Agreement." While courts have held that a

cease-and-desist letter may trigger a duty to preserve where a party is alleging copyright

infringement, *see, e.g.*, *Fox v. Riverdeep*, *Inc.,* 2008 WL 5244297, at *7 (E.D. Mich. 2008);

*Google Inc. v. American Blind & Wallpaper Factory*, 2007 WL 1848665, *1 (N.D. Cal. 2007),

nothing in the OTO letter suggested that a copyright infringement action was either imminent or

reasonably foreseeable. *See Energy West Mining Co. v. Oliver*, 555 F.3d 1211, 1220 (10th Cir.

2009) ("the lack of foresight is not the same as deliberate misconduct").

      The September 26 letter also must be placed in the context of the MobileSecure-Highwall

acquisition. According to Mr. Mackay, when he questioned Defendant Swier about Highwall's

relationship with OTO, he was told that the dispute involved royalties. By August 2006, Mackay

had concluded that "[i]t sounded like a toxic situation between Swier and OTO, and . . . I

couldn't think of anything positive that was going to come of it." As Mr. Mackay testified on

October 19, 2009,

> Part of the disclosure process, I realize that there were some problems in the
> relationship with the vendor, there were disputes, and I said, you know, we will
> not, you know – it's inappropriate for MobileSecure to try and acquire something
> where there's a legal dispute in place. And I said, we could take that out of the
> equation, and [Swier] said, you know, we don't need to do that because he's
> already figured out – he already has the ability to implement it. He's already got
> people he's talked to. He's been talking to some other vendors about other ways
> of getting that kind of functionality.

*See* Deposition of Duncan Mackay, at 105, attached to Plaintiff's Reply in Support of Motion for

Sanctions for Admitted Destruction of Evidence (doc. # 60).

> When asked specifically about the September 26 letter from OTO, Mackay testified that

he

> talked to Mr. Swier and asked him what this was all about. And it related – I
> asked him what it was about and he said, you know, it was a follow on from the
> dispute that had gone on between OTO and Highwall, so when I read – when I
> read this and said, our agreement has been terminated, I said, hadn't it already
> been terminated before. And I said, well, do I need to contact anybody and find
> out about this? And he said, no, these are crazy guys. You don't want to talk to
> them. I said, okay, I won't I said, are you handling this? You know, is there
> anything I need to be concerned about? And he said, clearly we've got some
> issues in terms of royalties we've got to sort out, but as far as I'm concerned, you
> know, it was not part of the assets we acquired so it's kind of a moot point.
> We're not using the software. We have no intentions of using it. In [Mackay's]
> mind they were sort of validating that this agreement had been null and void. I
> thought it was null and void back in the June, July time frame. . . . [W]e clearly
> had not assumed any of the, you know, contracts that were between OTO and
> Highwall, and that, you know, very specifically we had excluded that activity
> from the assets that we were acquiring, and there's a certain amount of
> indemnification language that Highwall gave to MobileSecure in this area.

*Id.* at 146-47. Given Mr. Mackay's understandings as to the nature of the past dispute between

Highwall and OTO, and his earlier decision not to acquire Highwall's interest in the OTO

Software, the September 29 letter purporting to terminate Highwall's rights under the Software

Private License Agreement reasonably would not put Mackay on notice of a imminent copyright

infringement claim against MobileSecure. *Cf. Toussie v. County of Suffolk*, 2007 WL 4565160, at *6 (no duty to preserve where key personnel did not anticipate litigation).

Defendant Swier has testified that he entered into the Software Development and Consulting Agreement with Excellone with the "intent to have a product so that I could push the deal through with MobileSecure." *See* Deposition of Rich Swier, at 169, attached to Plaintiff's Reply in Support of Motion for Sanctions for Admitted Destruction of Evidence (doc. # 60). Swier went on to explain that

> In fact, we killed it after the acquisition was done. We no longer sold it. We went with a completely different direction. So it was never really finished. It was just thrown up, thrown together for this acquisition, thrown up on the website, never sold it. . . . We didn't even pay Excellone all their – what we owed them.

*Id.*

While it appears to be undisputed that MobileSecure received Excellone's executable software product some time after August 2, 2006, that fact alone would not have placed MobileSecure on notice of a foreseeable claim for infringing upon OTO's Software. *See United States v. $40,955.00 in United States Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business."). I find that Defendants' duty to preserve documents or evidence relating to the Excellone transaction did not arise until Plaintiff filed its original Complaint on September 8, 2008. Therefore, Plaintiff's motion for sanctions is denied to the extent it seeks sanctions for Defendants' failure to preserve evidence relating to the Excellone transaction.

2. Relevance

Given the claims asserted in this litigation and the parties' previous communications, the

relevance of materials relating to the FDIC royalties dispute seems self-evident. *See* Fed. R. Evid. 401 ("'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). *See also Passlogix, Inc. v. 2FA Technology, LLC*, 2010 WL 1702216, at *26 (S.D.N.Y. 2010) ("A discarded document is relevant where a reasonable trier of fact could find that the document either would harm the spoliator's case or support the innocent party's case."); *Pension Committee v. Banc of America Securities, LLC*, 685 F. Supp. 2d at 467 ("Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner.").

Where the documents in question no longer exist, "'a party need not conclusively demonstrate that the evidence would have established liability on the part of the spoliator.' Rather, it needs only to 'come forward with plausible, concrete suggestions as to what the [lost] evidence might have been.'" *Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL 1995305 (W.D. Pa. 2008) (quoting *In re Wechsler*, 121 F. Supp. 2d 404, 423 (D. Del. 2000). In July 2006, Defendant Swier insisted that Highwall had sold the FDIC more than just the OTO Software and "that there was documents that existed that might help confirm my belief." Having implicitly conceded the relevance of these transaction documents in 2006, Mr. Swier and Highwall would be hard pressed to dispute the point for purposes of the pending litigation.

3.      The Issue of Culpability

Common sense suggests that a failure to produce or preserve relevant evidence may involve conduct that falls "along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality."  *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  *See also Anderson v. Cryovoc, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988) ("[n]ondisclosure comes in different shapes and sizes; it may be accidental or inadvertent, or considerably more blameworthy"); *Minter v. Prime Equipment Co.*, 2007 WL 2703093, *3 (E.D. Okla. 2007) (recognizing that "spoliation occurs with varying degrees of culpability").

In *Aramburu v. Boeing Co.*, the Tenth Circuit held that "the bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction."  112 F.3d 1398, 1407 (10th Cir. 1997), *limitation of holding recognized on other grounds by Timmerman v. U.S.Bank, N.A.*, 483 F.3d 1106 (10th Cir. 2007).  In the same decision, the Tenth Circuit further reasoned that no adverse inference should arise where the destruction of a document resulted from mere negligence, because only bad faith would support an "inference of consciousness of a weak case."[6]  *Id.  See also Henning v. Union Pacific Railroad Co.*, 530 F.3d 1206,1219-20 (10th Cir. 2008).  Of course, in cases where an adverse inference instruction is neither requested nor appropriate, the Tenth Circuit has held that a finding of bad faith is not required to impose non-dispositive sanctions, such as excluding evidence.  *103 Investors I, L.P. v. Square D. Co.*, 470

---

[6]"'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently.  It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest."  *Attorneys Title Guaranty Fund v. Goodman*, 179 F. Supp. 2d 1268, 1277 (D. Utah 2001).

F.3d 985, 988-89 (10th Cir. 2006).  *See also Jordan F. Miller Corp. v. Mid-Continental Aircraft Service, Inc.*, 139 F.3d 912 (Table) (10th Cir. 1998).

The difficulty comes in distinguishing between willful or intentional conduct, and those actions that are either negligent or grossly negligent.  Certainly, "the intentional destruction of relevant records, either paper or electronic, after the duty to preserve has attached, is willful." *Pension Committee v. Banc of America Securities, LLC*, 685 F. Supp. 2d at 464.  However, there is no evidence in the record before this court that would establish intentional destruction of the FDIC transaction documents.  If I credit Mr. Swier's previous statements, he would have no reason to destroy documents that he believed would support his position regarding royalties attributable to the FDIC transaction.  *See Antonio v. Security Services of America, LLC*, 2010 WL 2858252, at *5 (D. Md. 2010) (observing that "the absence of certain 'smoking gun'" documents does not always equate to bad faith or imply willful destruction).

 "A failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent," and may equate to gross negligence where the spoliator made no effort to collect records from key personnel or any effort to stop the routine destruction of electronic records.  *Pension Committee v. Banc of America Securities, LLC*, 685 F. Supp. 2d. at 464-65.  It is undisputed that Highwall and Swier "no longer have the documents [OTO] requested" relating to the FDIC transaction.  In response to OTO's inquiries, their counsel explained that

> When Highwall was sold to MobileSecure, emails/files were no longer backed up by Mr. Swier.  Mr. Swier has discarded and replaced at least three computers since Highwall was sold to MobileSecure.  In addition, since Highwall ceased operations and then was sold to MobileSecure, he has changed his email provider five times.

*Id.*

This court notes, however, that MobileSecure's purchase of Highwall assets was not completed until August 2 2006, at least two weeks after OTO's counsel requested all the documentation supporting Swier's assertions regarding the FDIC transaction, as well as "[x]erozed copies of all invoices sent to end users of OTO software whom Highwall licensed." *Cf. Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL 1995305, at *7 (holding that a company's duty to preserve documents is not waived or lost by a subsequent sale of the company). More importantly, MobileSecure and Swier agree that the acquisition of Highwall assets specifically excluded any products or assets associated with Highwall's Software Private Label License Agreement with OTO. Any obligations arising from that contract remained solely with Highwall, which necessarily included the FDIC transaction. Even after August 2, 2006, Highwall and Swier had an obligation to preserve documents and materials pertaining to the FDIC transaction.

While Mr. Swier speculated that documents relating to the FDIC transactions might have been contained on the laptop computers of other Highwall employees, he insisted those documents were not in his personal possession. *But see Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d at 522, n. 16 (noting that a party may be held responsible for the spoliation of relevant evidence done by its agents). Here, there is no evidence that Defendant Swier made any attempt to obtain relevant documents from other Highwall employees or took any precautions to maintain this information once the duty to preserve was triggered. *Cf. Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL 1995305, at *6. *See also Port Authority Police Asian Jade Society of New York v. Port Authority of New York,* 601 F. Supp. 2d 566, 570

(S.D.N.Y. 2009) (a party's "'somewhat purposeful sluggishness' in production of 'sanitiz[ing] evidence merits a finding of gross negligence'").

After carefully reviewing the record presented by the parties, I conclude that Highwall's and Swier's failure to preserve documentation relating to the FDIC transaction was the product of gross negligence, but not bad faith.

4.      Appropriate Sanctions

During a telephone hearing with the court on June 8, 2010, counsel for OTO indicated that he was confident that the existing documentary record would sustain his client's burden of proof as to the claims for relief arising from the FDIC transaction. However, OTO anticipates that Highwall and Swier will claim that Highwall sold the FDIC other bundled products in addition to the OTO Software, which had the effect of reducing OTO's share of the payment from the FDIC. OTO argues that it is disadvantaged in meeting this defense without documentation that was "uniquely" in Defendants' possession. Accordingly, OTO requests the following sanctions:

> First, Plaintiff should receive a jury instruction on adverse inferences. Plaintiff also wants Mr. Swier precluded from testifying that (1) records existed that would support his claim that he did not cheat OTO out of its royalties on the FDIC purchase . . . and (4) that Enterprise was bundled with the OTO software program.

*See* Plaintiff's Motion for Sanctions for Admitted Destruction of Evidence, at 10. Defendants Highwall and Swier did not respond to Plaintiff's motion for sanctions or provide counter-arguments.

As noted previously, the Tenth Circuit has held that in the absence of bad faith, the court cannot impose a dispositive sanction or give an adverse inference instruction at trial. Again, I do not find that the factual record supports Plaintiff's claim of bad faith and, therefore, must deny

25

the pending motion to the extent that it seeks an adverse instruction. Some lesser sanction, however, is clearly appropriate in this case.

"Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been [in] without spoliation." *Cf. Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (spoliation sanctions are intended to "level the evidentiary playing field," as well as penalize the offending party). In striving to "level the playing field," there must be some reasonable relationship between the sanction imposed and the prejudice actually suffered by the moving party. *See Larson v. Bank One Corp.*, 2005 WL 4652509, at *14 (N.D. Ill. 2005). *Cf. In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007) ("in the process of leveling the playing field, care must be taken not to tilt it too far in favor of the party seeking sanctions.").

In a non-spoliation case, the Tenth Circuit has held that the trial court should weigh several factors in determining an appropriate sanction: (1) the degree of actual prejudice to the moving party; (2) the amount of interference with the judicial process; (3) the culpability of the non-moving party; (4) whether the court warned the party in advance that a dispositive sanction would be likely for non-compliance, and (5) the efficacy of lesser sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). *See also Gates Rubber Co. v Bando Chemical Industries, Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996).[7] The court must also take care to impose the least onerous sanction that will remedy the prejudice and, as applicable, punish the wronger. *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, 139 F.3d 912, at *7 (10th Cir. 1998) (Table).

---

[7]Where a dispositive sanction is not at issue, only the first three factors are applicable. *See Markham v. National States Insurance Co.*, 2004 WL 3019308, at *12 (W.D. Okla. 2004).

This court has already determined that Highwall and Swier were grossly negligent in failing to preserve records relating to the FDIC transaction. Given the absence of a trial date, I find minimal interference with the judicial process.

The more difficult issue concerns the degree of prejudice, if any, that may result from the missing documents. Plaintiff's counsel concedes that the missing documents are not necessary to establish OTO's *prima facie* case relating to the unpaid royalties. OTO's request for a non-dispositive sanction implicitly rests on the assumption that the missing documentation "would absolutely rebut the naked assertions made by the Defendants." Yet, the record before the court does not necessarily support that assumption. To the contrary, Mr. Swier and Highwall's counsel in 2006 took the position the documentation would support Highwall's accounting of royalties. This court lacks sufficient information to draw any firm conclusions as to what the subject documents might actually show.

OTO requests as a non-dispositive sanction that Defendant Swier be precluded from representing at trial that records existed that would support his claim that he did not cheat OTO out of its royalties on the FDIC purchase. Courts have imposed evidentiary sanctions to prevent the spoliating party from profiting by their failure to preserve evidence. *See, e.g., 103 Investors I, L.P. v. Square D. Co.*, 470 F.3d at 988-89 (held that the trial court properly struck testimony offered in plaintiff's case after finding that plaintiff's failure to preserve physical evidence preventing defendant from defending against the claim that the electrical equipment at issue lacked the appropriate warning label). *Cf. West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 780 (suggesting that an appropriate spoliation sanction could consist of precluding the spoliator from introducing evidence on matters contained in destroyed evidence).

This case, however, is distinguishable from the circumstances in *103 Investors*. There, the physical evidence had been destroyed and there was no alternative source for that same information. *Compare Mathias v. Jacobs*, 197 F.R.D. 29, 38-39 (S.D.N.Y. 2000) (declining to impose spoliation sanctions where duplicative documentary evidence was available), *order vacated on other grounds*, 167 F. Supp. 2d 606 (S.D.N.Y. 2001). The same cannot be said in this case. While I am not prepared to discount or discredit Plaintiff's assumptions regarding the missing documents, the court cannot impose sanctions on speculation alone. Plaintiff's counsel readily conceded during the hearing on June 8, 2010, that his client had made no attempt to subpoena records from the FDIC. Before the court enters an order restricting evidence at trial, Plaintiff should demonstrate that it has pursued all reasonably available sources of that same information.

The court will allow OTO to reopen discovery for the limited purpose of seeking relevant documents from the FDIC. Plaintiff could, and perhaps should, have availed itself of this option during the discovery period. However, I can appreciate OTO's desire to avoid the additional burden and expense of pursuing discovery from a federal agency. Those discovery efforts would have been unnecessary had Highwall and Swier complied with their obligation to preserve relevant documents. Monetary sanctions are appropriate in spoliation cases to defray the discovery costs associated with identifying and pursuing alternative sources of information. *See Turner v. Hudson Transit Lines*, 142 F.R.D. at 78 (internal citations omitted). Plaintiff is entitled to recover the reasonable fees and costs incurred in conducting the limited discovery permitted by this Order. Given the limited success achieved with the pending Motion for Sanctions, I will not impose any other monetary sanction.

Accordingly, for the foregoing reasons, Plaintiff OTOs' Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54) is GRANTED IN PART and DENIED IN PART. The Motion is denied to the extent OTO seeks sanctions of any kind against Defendant MobileSecure.  As to Defendant Highwall and Swier, the court finds those defendants failed to take appropriate steps to preserve evidence that they knew or should have known was relevant to reasonably foreseeable litigation relating to Highwall's transaction with the FDIC.  However, the court does not find that Highwall and Swier acted willfully or in bad faith and, therefore, OTO's request for an adverse inference instruction is denied.  The court finds that a lesser sanction is warranted.  Accordingly, I will permit Plaintiff OTO to re-open discovery for the limited purpose of serving a subpoena *duces tecum* to obtain relevant documents from the Federal Deposit Insurance Corporation.  Defendants Highwall and Swier will be jointly and severally liable for the reasonable fees and costs incurred by OTO in an effort to obtain relevant records from the FDIC.

It is important to note that the findings incorporated in this Order are based upon the record presently before this court.  I have concluded, in light of that record, that additional sanctions are not justified at this time.  However, nothing in this Order is intended to preclude Plaintiff OTO from seeking additional evidentiary rulings or sanctions prior to trial in the event the subpoena duces tecum served on the FDIC proves to be futile.[8]

B.      *MobileSecure's Motion for Summary Judgment*

---

[8]*See, e.g., Pension Committee v. Banc of America Securities, LLC*, 685 F. Supp. 2d at 496 (setting out a jury instruction which would permit the jurors, if they so chose, to presume from plaintiffs' gross negligence in failing to preserve evidence that the missing evidence would have been favorable to the non-spoliating party; that jury instruction also makes clear that the jury would be free to decline to presume the lost evidence was relevant or that the missing evidence would have been favorable to the non-spoliating party).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). *See also Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991); *Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir.1991). To meet the burden of persuasion required to support summary judgment under Rule 56, the movant must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986)).

While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim. *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052 (1994). Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *See* Fed. R. Civ. P. 56(e). *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52. Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo.1998). The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact. *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Defendant MobileSecure has moved for summary judgment in its favor and against OTO for copyright infringement, unfair competition, and unjust enrichment. As to the claim for copyright infringement, MobileSecure argues that Plaintiff cannot prove copying of a protected expression that is of such importance as to be actionable. MobileSecure further argues that OTO cannot prove actual damages under its copyright infringement claim, and is not eligible for statutory damages or attorneys fees. Defendant insists that OTO's unfair competition claim must fail because Plaintiff cannot show that MobileSecure did anything to confuse the consuming public. Finally, MobileSecure's motion argues that OTO cannot present evidence sufficient to establish a *prima facie* claim for claim for unjust enrichment.[9]

---

[9]In its Response brief, Plaintiff OTO states it is "willing to abandon its claim for [unjust enrichment] and will either voluntarily dismiss this claim or consent to have summary judgment enter on it." *See* Plaintiff's Response Brief in Opposition (doc. # 73), at 12. Accordingly, this court recommends that Defendant MobileSecure's Motion for Summary Judgment be granted as

1.      Copyright Infringement

MobileSecure and OTO agree that to prevail on its claim for copyright infringement, Plaintiff must show:  (1) that it owns a valid copyright; and (2) that MobileSecure copied protectable elements of the copyrighted work.  *See Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d at 832.  To defeat MobileSecure's motion for summary judgment on the First Claim for Relief, OTO must present sufficient facts to establish a genuine issue for trial as to each of these elements.  MobileSecure concedes that OTO registered its copyright in the subject software on July 7, 2008.  *See Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1214, 1220 (D. Kan. 2003) (noting that a certificate of registration constitutes *prima facie* evidence of the validity of a copyright). However, Defendant contends there are no material facts to suggest that MobileSecure copied a protected expression of the OTO Software that is actionable.  Plaintiff argues, to the contrary, that MobileSecure is liable for procuring or authorizing a derivative version of the OTO Software.[10]

OTO can prove copyright infringement "either by providing direct evidence of copying or by providing indirect evidence of copying through showing (1) access to the original work, and (2) substantial similarity between the original work and the allegedly infringing work."  *Cf. Kohus v. Mariol*, 328 F.3d 848, 854 (6th Cir. 2003).  "Ultimately, to prove factual copying, the

to OTO's claim for unjust enrichment.

[10]"A 'derivative work' is defined as a 'work based upon one or more preexisting works' to which original materials are newly added."  *Kindergartners Count,*, 249 F. Supp. 2d at 1222 (citing 17 U.S.C. § 101).

plaintiff must come forward with sufficient evidence that a reasonable factfinder, taking together the evidence of access and the similarities between the programs, could find that the second work was copied from the first." *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d at 833.

The second element requires the court to determine, as a mixed question of law and fact, whether the elements allegedly copied by the defendant are protected by copyright. *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1370 (10th Cir. 1997). The Tenth Circuit has adopted the "Abstract-Filtration-Comparison" methodology to separate ideas from protectable expression.

> First, in order to provide a framework for analysis, . . . a court should dissect the [work] according to its varying levels of generality as provided in the abstractions test. Second, poised with the framework, the court should examine each level of abstraction in order to filter out those elements of the [work] which are unprotectable. Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular facts of the program under examination. Third, the court should then compare the remaining protectable elements with the allegedly infringing [work] to determine whether the defendants have misappropriated substantial elements of the plaintiff's [work].

*Id.* at 1371.

In this case, Plaintiff has not come forward with any direct evidence of copying. It also appears to be undisputed that OTO never gave Highwall, Swier, Excellone or MobileSecure the source code for the OTO Software. *See* Deposition of Todd Rogers, at 29-30, attached as Exhibit 1 to MobileSecure's Reply to Plaintiff's Supplemental Response (doc. # 94). Mr. Rogers, Plaintiff's expert and the developer of the OTO Software, has expressed the opinion that "several lines of source code in the provided MobileSecure source . . . are identical to the source provided by OTO Software." *See* Expert Report of Todd Rogers, attached to Plaintiff's

Supplemental Response (doc. # 93). Mr. Roger further maintains that the similarities he found "were long and distinct enough that it would be unreasonable to think that two developers on opposite sides of the world with no communication came up with the exact same strings without copying being involved." *Id. See Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d at 833 (acknowledging that a high degree of similarity may permit an inference of access).

While disputing Plaintiff's claim of copying, MobileSecure contends that OTO has failed to show *actionable* copying. According to Defendant, the evidence of copying cited in Mr. Rogers' December 22, 2009 Affidavit attached as Exhibit 1 to Plaintiff's Response Brief in Opposition (doc. # 73) only involves graphic user interfaces ("GUI") which are not protected by copyright. *Cf. Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). For purposes of the pending motion, the court must draw all inferences in favor of OTO, the non-moving party. The court finds that the current record creates a genuine issue of material fact regarding the question of copying.

The court now turns to the issue of whether there is substantial similarity between the protectable elements of the OTO Software and the MobileSecure software. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002) ("[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity"). Consideration of that issue is complicated by the evolution of the parties' arguments. To some extent, those arguments are akin to "ships passing in the night." MobileSecure's initial Brief in Support of Motion for Summary Judgment (doc. # 57) made no attempt to apply the Abstraction-Filtration-Comparison methodology to the specific facts of this

case.  Rather, MobileSecure argued that "software substantial similarity tests require expert analysis and testimony" and that "[w]ithout testimony based on 'scientific, technical or other specialized knowledge,' OTO cannot separate the parts of the software that are functional from that which are expression."  Defendant insisted that OTO could not meet its burden of showing substantial similarity in the absence of "expert analysis and testimony."

OTO's Response Brief (doc. # 73) offered an Affidavit provided by Todd Rogers as support for its assertion that "the tangible expression of the software is found in the text of each individual screen [and] [t]he text is original and was copied almost word for word through the software program by Excellone."[11]  In Plaintiff's view, "by copying the written text, the abstraction filtration test required by the Tenth Circuit in *Bando* . . . is obvious."  In short, Plaintiff's Response Brief provides only slightly more detailed analysis than MobileSecure's initial Brief.

On January 15, 2010, MobileSecure filed a Reply in Support of Motion for Summary Judgment (doc. # 76) which reiterated its earlier argument that OTO could not meet its burden of proof on the "substantial similarity" element without expert testimony.  Defendant once again pointed out that as of January 15, 2010, "OTO does not have an expert" and "simply cannot carry its burden of proof for infringement of a computer code without such testimony." For the first time, MobileSecure also argued that Plaintiff's claim must fail to the extent that OTO's proof of substantially similarity is based solely on the fact that the OTO and MobileSecure

---

[11]At the time Plaintiff filed its Response Brief, Mr. Rogers had not yet been designated as an expert witness or submitted an expert report.

software utilize identical "graphic user interface."[12]  Mr. Rogers has acknowledged that all the language from the OTO Software that he contends was copied is visible to a user through a graphic user interface.  *See* Deposition of Todd Rogers, at 30-31, attached as Exhibit 1 to MobileSecure's Reply to Plaintiff's Supplemental Response (doc. # 94).  MobileSecure maintains that because the OTO Software "performs a function [and] it is not an artistic work," any "pixel for pixel similarity [in the GUI] . . . does not support any theory of infringement."  As support for this latter argument, MobileSecure's Reply cites the decisions in *Maddog Software, Inc. v. Sklader*, 382 F. Supp. 2d 268 (D.N.H. 2005) and *Ervin and Associates, Inc. v. United States*, 59 Fed. Cl. 267 (Ct. Cl. 2004).

Plaintiff's Supplemental Response (doc. # 93), filed on March 22, 2010, does not address or attempt to distinguish the analysis set forth in *Maddog Software* or *Ervin.*  Rather, OTO insists that Mr. Rogers' Affidavit and more recent expert report provides the analysis contemplated by the Tenth Circuit in *Gates Rubber.*  With Mr. Rogers' opinions and conclusions, OTO believes it has "met and overcome the only substantive argument made by the Defendant in seeking summary judgment, namely that Plaintiff cannot prove its case."

MobileSecure completed the sequence of briefing on the issue of "substantial similarity" by reiterating its reliance on *Maddog Software.*  According to MobileSecure, Plaintiff's proffered evidence shows, at best, that Excellone merely engaged in reverse engineering, "by starting with

---

[12]The court in *Computer Access Technology Corp. v. Catalyst Enterprises, Inc.*, 2001 WL 34118030, at *1 n.1 (N.D. Cal. 2001) explained that

> A GUI allows a computer user to send commands to his or her computer by manipulating graphical images on the computer screen, most commonly with a mouse. GUIs may be contrasted with text-based interfaces - such as the interface of the once-common "DOS" program - which require a user to send commands to the computer through typing alphanumeric commands on the keyboard.

the GUI and working backwards from there to generate new code (in a different language) that produced the same GUI and similar functionality." MobileSecure suggests this argument is not challenged by any of the cases cited in Plaintiff's Response or Supplemental Response.

However, I note that MobileSecure's "reverse engineering" argument is based on assumption, rather than citation to specific evidence. It also bears noting that MobileSecure has not proffered opinions from a countervailing expert. *But see R..C. Olmsted, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 894 (N.D. Ohio 2009) (after noting the complexity of computer software, concluded that expert testimony was necessary "to establish what elements, if any, are necessary to the function" of the software and, therefore, unprotectible); *Integrated Bar Coding Systems, Co. v. Wemert*, 2007 WL 496464, at *4 (E.D. Mich. 2007) (in a case alleging copyright infringement of software code, opined that "[s]ubstantial similarity should be considered from the viewpoint of . . . those with knowledge and expertise in computer programming;" noted that "the lay public does not possess knowledge of what constitutes creativity in the computer code writing industry, which elements are standard and which elements are dictated by efficiency or by external standards").

A court should grant summary judgment if it finds, from the parties' submissions, "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." I do not find that the record presently before the court supports such a finding with respect to liability under the First Claim for Relief. The court has read carefully the decisions in *Maddog Software, Inc.*, *Ervin and Associates,* and *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). I am not suggesting that Plaintiff should discount or disregard the implications of those cases. However, none of those decisions represent

controlling precedent in the Tenth Circuit. Moreover, each of the cases cited with favor in MobileSecure's Reply to Plaintiff's Supplemental Response engaged in the very "Abstraction-Filtration-Comparison" analysis that is lacking in the parties' briefing. In applying the substantial similarity standard in a copyright case involving computer programs, the Second Circuit has observed that "district courts would be well-advised to undertake a three-step procedure . . . in order to determine whether the non-literal elements of two or more computer programs are substantially similar." *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d at 706. *Cf. Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) (in a copyright dispute involving graphical user interface, held that the trial court must apply "the same process of analytical dissection" applicable to other copyrighted works).

While summary judgment is not a disfavored procedure and may promote the efficient disposition of an action, it is the parties' obligation to marshal the evidence and then "tie the salient facts, supported by specific record citation, to [their] legal contentions." *Saladin v. Packer-ware Corp*., 2001 WL 476066, at *5 (D. Kan. 2001). In deciding motions under Rule 56, the courts have a "limited and neutral role in the adversarial process, and [should be] wary of becoming advocates who comb through the record and make a party's case for it." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). After thoroughly reviewing the record and legal arguments advanced by the parties, I conclude that Defendant's Motion for Summary Judgment should be denied to the extent it asserts Plaintiff "cannot prevail on its claim for copyright infringement against MobileSecure." I believe the parties should proceed to trial on that issue.

    2.    <u>Statutory Damages and Attorneys Fees</u>

In its First Claim for Relief, OTO claims to have been damaged by Defendants' copyright violations and asserts that Plaintiff will continue to suffer irreparable harm unless Defendants are permanently enjoined.[13]  *See* Complaint (doc. # 1) at ¶¶ 36 and 37.  In its Prayer for Relief, OTO requests, *inter alia*, a "judgment for all damages suffered by Plaintiff as a result of Defendants' acts complained of herein" and "its costs in this action, including expert witness fees, reasonable attorney fees, and interest as provided by law."

MobileSecure argues, in part, that OTO "is ineligible for statutory damages and attorney's fees because it registered its copyright two years after the alleged infringements occurred."  It is undisputed that Plaintiff registered a copyright in the OTO Software on July 7, 2008.  *See* MobileSecure's Brief in Support of Motion for Summary Judgment (doc. # 57), at 4, ¶ 4, and Plaintiff's Response Brief in Opposition (doc. # 73), at 4, ¶ 4.  OTO also has consistently taken the position that MobileSecure's and Highwall's first act of copyright infringement occurred in or before September 2006.  *Cf. Bouchat v. Bon-Ton Department Stores, Inc.*, 506 F.3d 315, 330 (4th Cir. 2007) (in applying § 412 of the Copyright Act, copyright infringement commences when the first act in a series of acts constituting continuing infringement occurs).

Section 412 of the Copyright Act states, in pertinent part, that a plaintiff may not recover an award of statutory damages or attorneys fees "for any infringement of copyright in unpublished work commenced before the effective date of its registration."  *See* 17 U.S.C. § 412.  "Section 412 'leaves no room for discretion, mandating that no attorney's fees or statutory damages be awarded so long as the infringement commenced before registration of the

---

[13]In its Reply in Support of Motion for Summary Judgment (doc. # 57), MobileSecure asserts that it "has no intention of violating OTO's copyright and would not object to an injunction to that effect."

copyright." *Gerig v. Krause Publications, Inc.*, 58 F. Supp. 2d 1261, 1268 (D. Kan. 1999). *See also General Electric Property Management Co. of Colorado v. Broadcast Information Services, Inc.*, 1988 WL 106018, at *3 (D. Colo. 1988) (holding that § 412 precludes the award of statutory damages and attorney's fees in infringement actions where the infringement of copyrights in unpublished works commenced before the effective date of registration).

Plaintiff's Response Brief does not persuasively rebut the arguments advanced by MobileSecure. OTO's reliance on 17 U.S.C. § 504(a) is unavailing. Plaintiff correctly notes that § 504(a) of the Copyright Act provides that a copyright infringer is liable for either the copyright owner's actual damages and any additional profits of the infringer, or statutory damages. However, this statutory language is qualified by the phrase "[e]xcept as otherwise provided by this title." The Copyright Act provide an explicit exception in § 412. *See also Phoenix Renovation Corp. v. Rodriquez*, 461 F. Supp. 2d 411, 422 (E.D. Va. 2006) (holding that plaintiff's right to recover statutory damages under § 504(a) was barred by the limitation imposed in § 412). Here, the combination of undisputed facts and Plaintiff's own allegations preclude any award of attorneys fees or statutory costs.[14]

Although motions for partial summary judgment are disfavored, *see, e.g., Bruschini v. Board of Education of Arlington Cental School District*, 911 F. Supp. 104, 106 (S.D.N.Y. 1995), Rule 56(d) provides that the court may issue "an order specifying what facts – including items of damages or other relief – are not genuinely at issue" and those facts "must be treated as

_____

[14]For some inexplicable reason, Plaintiff's Response Brief in Opposition also cites with favor *Malco Industries, Inc. v. Elliott*, Civil Case No. 09-cv-00523-PAB (D. Colo., August 21, 2009). Judge Brimmer's Order in that case summarily granted the plaintiff's motion for default judgment and awarded statutory costs and attorney's fees. Nothing in that Order rebuts or contradicts the legal arguments advanced in Defendant's Brief in Support of Motion for Summary Judgment.

established in the action." *Cf. William Hablinski Architecture v. Amir Construction, Inc*, 2004 WL 4909901, at *3 (C.D. Cal. 2004) (holding that defendant was entitled to summary adjudication on plaintiff's claim for statutory damages and attorney's fees and precluding plaintiff from seeking those amounts under the Copyright Act as a matter of law); *NBC Subsidiary (KCNC-TV), Inc. v. Broadcast Information Services, Inc.*, 717 F. Supp. 1449, 1454 (D. Colo. 1988) (awarding partial summary judgment in favor of defendant on plaintiff's claim for statutory damages and attorney's fees). This court concludes that OTO's claim for statutory damages and attorneys fees with regard to allegedly infringing conduct that purportedly commenced in or about September 2006 is barred as a matter of law under 42 U.S.C. § 412. *Cf. Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1264 (D. N.M. 2009) (noting that plaintiff could not recover statutory damages because plaintiff did not registered his work until nearly three years after the first infringing publication).[15]

3.    Unfair Competition

OTO's Fifth Claim for Relief asserts a claim for unfair competition under the Lanham Act, 15 U.S.C. § 1225(a). The Complaint specifically alleges that Defendants "failed to disclose publicly that copies of OTO Software have been renamed and sold under a different name." *See* Complaint (doc. # 1), at ¶ 61. OTO further claims that "a substantial likelihood and appreciable number of consumers and members of the group interested in purchasing wireless security software have been and will be misled and/or confused as a result of the aforesaid acts of Highwall and MobileSecure," and that Defendants have deprived Plaintiff of "sales, goodwill,

_____

[15]MobileSecure's Motion for Summary Judgment also challenges OTO's ability to prove actual damages at trial. In light of my recommendation to deny summary judgment as to liability under the First Claim for Relief, I will not speculate on whether or to what extent OTO will produce evidence of damages at trial

value and benefits that otherwise would have been available to OTO."  *Id.* at ¶¶ 63 and 64.

To prevail on this claim, Plaintiff must show that MobileSecure

(1) . . . made material false or misleading representations of fact in connection
with the . . . promotion of its product; (2) in commerce; (3) that are either likely to
cause confusion or mistake as to (a) the origin, association or approval of the
product with or by another, or (b) the characteristics of the goods or services; and
(4) injure the plaintiff.

*La Resolana Architects, P.A. v. Reno, Inc*., 555 F.3d 1171, 1181(10th Cir. 2009).  The party

alleging unfair competition has the burden of proving likelihood of confusion.  *Utah Lighthouse*

*Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1055 (10th Cir.

2008).  "Likelihood of confusion is typically evaluated according to a six-factor test in which the

court considers: (1) the degree of similarity between the [products]; (2) the intent of the alleged

infringer in using [the product]; (3) evidence of actual confusion; (4) similarity of products and

manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the

strength or weaknesses of the [competing products]."

As the moving party challenging the unfair competition claim, MobileSecure must

identify those portions of the record that show the absence of a genuine issue of material fact.

MobileSecure can meet this burden of showing there is no evidence to support this claim.  *Cf.*

*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).  The uncontroverted facts

show that in addition to the non-exclusive licensing agreement with Highwall, OTO sold the

OTO Software online and in retail stores.  Online, it sold three to four licenses a day at $30 each

from spring 2004 through spring 2006.  In retail stores, OTO sold less than 2,000 copies in a six

month period.  At the end of approximately six months, the distributor pulled the product from

the stores.  *See* Defendant's Brief in Support of Motion for Summary Judgment (doc. # 57), at 4,

¶ 12, and Plaintiff's Response Brief in Opposition (doc. # 73), at 5, ¶ 13.  OTO concedes that it entered approximately five of other license agreements with other companies but none of the licensees made a single sale.  *See* Defendant's Brief in Support of Motion for Summary Judgment (doc. # 57), at 5, ¶ 13, and Plaintiff's Response Brief in Opposition (doc. # 73), at 5, ¶ 13.  These undisputed facts do not suggest that OTO had a particularly strong position in the market.

MobileSecure insists that it never sold the OTO Software product and never sold any of the Highwall OnEdge product after August 2006.  In disputing that assertion, OTO points to Mr. Mackay's deposition testimony, during which he acknowledged that references to the OnEdge product remained on MobileSecure's website as late as September 4, 2008.  *See* Exhibit 3, pp. 221-222, attached to Plaintiff's Response Brief in Opposition.  Yet, in the same deposition excerpt, Mr. Mackay stated that MobileSecure was not selling any of the OnEdge product.  OTO has not pointed to any evidence in the record that would refute this testimony or establish a genuine issue of fact as to the latter assertion.  Mr. Mackay's testimony suggests little, if any, potential for confusion.

OTO has not come forward with facts or legal precedents sufficient to sustain its burden under Rule 56 as the non-moving party.  Plaintiff's Response Brief (doc. # 73) addresses the unfair competition claim in a single four-sentence paragraph that is devoid of any reference to case law.  OTO's Supplemental Response (doc. # 93) does not discuss the unfair competition claim at all.  OTO has not come forward of any evidence of actual confusion in the marketplace. *NSM Resources Corp. v. Target Corp.*, 636 F. Supp. 2d 857, 867-68 (D. Minn. 2008) (in a case asserting unfair competition under the Lanham Act, held that a lack of evidence of actual

confusion weighed in favor of the defendant). Plaintiff has offered a single e-mail from a MobileSecure representative in September 2006 which describes MobileSecure's Wireless Solution and Highwall's Endpoint as the same product. *See* Exhibit 7 attached to Plaintiff's Response Brief in Opposition, at 12. Plaintiff has not come forward any evidence to suggest this e-mail resulted in any sale of MobileSecure's product or in any lost sales for OTO. More importantly, this isolated reference cannot suffice to successfully oppose MobileSecure's motion for summary judgment. *Cf. Massey v. Scrivner, Inc.*, 901 F. Supp. 1546, 1550 (W.D. Okla. 1994) ("[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to defeat a motion for summary judgment), *aff'd by Milton v. Scrivner, Inc.*, 53 F.3d 1118 (10th Cir. 1995). On the record presented by the parties, this court must recommend that MobileSecure's motion for summary judgment be granted as to the claim for unfair competition.

## CONCLUSION

Consistent with the foregoing analysis, Plaintiff OTO Software, Inc.'s Motion for Sanctions for Admitted Destruction of Evidence (doc. # 54) is GRANTED IN PART and DENIED IN PART.

The court RECOMMENDS that Defendant MobileSecure's Motion for Summary Judgment (doc. # 56) be GRANTED as to the Fifth Claim for Relief (unfair competition) and Sixth Claim for Relief (unjust enrichment) against MobileSecure. I further recommend that the district court bar OTO's request for statutory damages and attorney's fees as violative of 17 U.S.C. § 412. In all other respects, this court RECOMMENDS that MobileSecure's Motion for Summary Judgment be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 6th day of August, 2010.


BY THE COURT:


s/ Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge