IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01897-PAB-CBS

OTO SOFTWARE, INC., a Texas corporation,

     Plaintiff,

v.

HIGHWALL TECHNOLOGIES, LLC, a Florida limited liability company; and
RICH SWIER.

     Defendants.

---

**RECOMMENDATION ON PLAINTIFF OTO SOFTWARE, INC.'S
MOTION FOR JUDGMENT AGAINST
HIGHWALL TECHNOLOGIES, LLC and RICH SWIER**

---

Magistrate Judge Shaffer

     PENDING before the court is Plaintiff OTO Software, Inc.'s ("OTO") Motion for

Judgment Against Highwall Technologies, LLC ("Highwall") and Rich Swier (doc. #127), filed

on December 6, 2010. Plaintiff's motion seeks default judgments against Defendants Highwall

and Swier pursuant to Fed. R. Civ. P. 55(b)(2). Neither defendant has filed a response to the

instant motion. With a Memorandum Order (doc. #128) entered on December 7, 2010, this

motion was referred to the Magistrate Judge.

     This court held a hearing on Plaintiff's Motion for Judgment on April 4, 2011. At that

hearing, Plaintiff presented testimony from Todd Rogers and Christopher Basham, as well as

various exhibits. At the conclusion of that hearing, the court gave Plaintiff's counsel leave to

submit further briefing in support of his client's request for damages and legal fees. OTO

submitted a Memorandum Brief on Damages for Default Judgment (doc. #138) on April 13,

2011.  The court has carefully reviewed the pending motion and related brief and exhibits, the

entire case file and the applicable case law.[1]

## PROCEDURAL HISTORY

At the outset of this litigation, Defendants Highwall, Swier and MobileSecure, Inc.

("MobileSecure") were all represented by John Tanner.  Mr. Tanner appeared at the February 4,

2009 scheduling conference on behalf of all three defendants and signed the Fed. R. Civ. P. 16

Scheduling Order (doc. #21) in that capacity.  The Scheduling Order set a discovery deadline of

August 7, 2009 and a dispositive motion deadline of September 18, 2009.  On August 14, 2009,

this court extended the discovery cutoff to October 26, 2009 and the dispositive motion deadline

to November 20, 2009.

Mr. Tanner filed a Motion to Withdraw Appearance as Counsel for Highwall

Technologies, LLC and Rich Swier (doc. #48) on October 14, 2009.  In his motion, Mr. Tanner

explained that "Highwall Technologies, LLC and Mr. Swier have not fulfilled their obligation to

[defense counsel's law firm] regarding its services and were given reasonable warning that the

lawyer would withdraw unless the obligation was fulfilled."  Both clients were advised of the

October 26, 2009 discovery cutoff date, the November 20, 2009 dispositive motion deadline, and

a settlement conference set with the court for November 12, 2009.  Mr. Tanner also advised

Highwall that

―――――――――――――――――

[1]I note in passing that Plaintiff's Motion for Judgment (doc. #127) contains a single reference to Rule 55(b) but does not cite any case law pertinent to the issues before the court. *See* D.C.COLO.LCivR 7.1C ("a motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a recitation of legal authority incorporated into the motion).  With few if any exceptions, every reported decision cited in this Recommendation was the product of the court's own research.

> As a limited liability company, Highwall Technologies, LLC cannot appear without counsel who is admitted to practice before the District Court for the District of Colorado, and absent prompt appearance of substitute counsel, pleadings, motions, and other papers may be stricken, and default judgment or other sanctions may be imposed against Highwall Technologies, LLC.

*See* Exhibit B attached to Motion to Withdraw Appearance as Counsel for Highwall Technologies, LLC and Rich Swier.  I granted Mr. Tanner's motion to withdraw on October 19, 2009, with a Minute Order (doc. #50) that again reminded Highwall "that it cannot appear without counsel admitted to practice before this court, and absent prompt appearance of substitute counsel, pleadings, motions and other papers may be stricken, and default judgment or other sanctions may be imposed."

Defendants Highwall and Swier have not been active participants in this litigation since October 19, 2009.  Neither defendant attended hearings or status conferences conducted by the court on January 27, 2010 (doc. #83), February 26, 2010 (doc. #89), and June 8, 2010 (doc. #98).  The court's docket sheet shows that notices setting the foregoing hearings and conferences were mailed to the address listed for Defendants Highwall and Swier, and gives no indication those notices were returned undelivered to the District Court.  Defendants Highwall and Swier also were served with copies of Plaintiff OTO's Motion for Sanctions for Admitted Destruction of Evidence (doc. #54), Motion for Summary Judgment Against Highwall Technologies, LLC and Rich Swier, and for Sanctions (doc. #58), and Plaintiff's Amended Motion for Summary Judgment Against Highwall Technologies, LLC and Rich Swier, and for Sanctions (doc. #70).[2]

---

[2]On June 8, 2010, Plaintiff's counsel moved to withdraw the Amended Motion for Summary Judgment Against Highwall Technologies, LLC and Rich Swier (doc. #70), in favor of a pending Motion for Clerk's Entry of Default and Default Judgment (doc. #95).  I granted that oral motion without prejudice.  *See* doc. #98.

Neither defendant filed a response in opposition to any of the foregoing motions.  To date, no attorney has entered an appearance on behalf of Highwall Technologies, LLC.

On May 10, 2010, Plaintiff OTO filed a Motion for Clerk's Entry of Default and Default Judgment (doc. #95).  Defendants Swier and Highwall declined to respond to this motion.  I entered a Minute Order (doc. #112) on September 13, 2010, granting Plaintiff's motion to the extent it sought a Clerk's Entry of Default.  Default was entered against Defendants Highwall and Swier pursuant to Fed. R. Civ. P. 55(a) on September 20, 2010.

Since September 20, 2010, the court has had no contact with either Highwall or Swier. The Clerk's Entry of Default was mailed to each defendant at the identical address on Latitude Lane, Osprey, Florida which had been provided by these defendants at the outset of the litigation.  Mail sent to Defendant Swier at the Latitude Lane address was returned as undeliverable on September 22 and 29, 2010 (doc. ##115, 116 and 118).  If Defendant Swier changed his mailing address after September 20, 2010, he failed to comply with D.C.COLO.LCivR 10.1M, which requires a *pro se* party to file written notice within five days after any change of address, e-mail address or telephone number.

Neither defendant served a response to the instant Motion for Judgment, which was mailed to Highwall and Swier at the Latitude Lane address.[3]  I set a hearing on the instant motion for March 7, 2011, in an Amended Minute Order (doc. #130) that was mailed to the Latitude Lane address on or about December 9, 2010.  This mail was not returned to the court as undeliverable, so I will presume it was received by Defendants.  The court reset the motion

---

[3]To the court's knowledge, this mailing was not returned to Plaintiff OTO's counsel as undeliverable.

4

hearing for March 31, 2011 and issued a corresponding Minute Order (doc. #134) on January 3, 2011.  Once again, the court utilized the Latitude Lane address and that mailing was not returned as undeliverable.  Without evidence to the contrary, I will presume that Defendants Swier and Highwall were aware of Plaintiff's Motion for Judgment and the related hearings.

## ANALYSIS

Rule 55(a) of the Federal Rules of Civil Procedure provides that a default may be entered against a party that has failed to plead or otherwise defend an action.  A corporation or limited liability company in litigation in the federal courts must be represented by counsel.  *See, e.g., Tal v. Hogan*, 453 F.3d 1244, 1254 n. 8 (10th Cir. 2006); *De Angeli v. Johnson*, 2007 WL 2298333, at *1 (D. Colo. 2007).  *See also* D.C.COLO.LCivR 83.3D.  Following the withdrawal of its original counsel, Defendant Highwall was put on notice that it could not appear without counsel and that "absent prompt appearance of substitute counsel . . . default judgment or other sanctions" could be imposed by the district court.  As of the date of this Recommendation, substitute counsel has not entered an appearance on behalf of Highwall.  Accordingly, I recommend that Highwall Technologies LLC's Answer (doc. #10) be struck.  *Cf. DC Aviation, LLC v. Avbase Flight Services, LLC*, 2007 WL 2683554, at *1 (D. Colo. 2007) (noting that the court may strike a corporate entity's answer where it fails to obtain legal representation).

Moreover, under the facts of this case, there is ample justification for entering a default judgment against *pro se* Defendant Swier.  While, as a general matter, default judgments are disfavored, *see, e.g., Polaski v. Colorado Department of Transportation*, 198 Fed. Appx. 684, 685 (10th Cir. 2006), entry of a default judgment is committed to the sound discretion of the trial court.  *See, e.g., International Painters and Allied Trades Industry Pension Fund v. Auxier*

*Drywall, LLC,* 531 F. Supp. 2d 56, 57 (D.D.C. 2008).  A plaintiff may invoke the court's

inherent power to enter a default judgment when a defendant fails to defend an action or

otherwise engages in dilatory tactics.  *Teamsters Local 639-Employers Health Trust v. Boiler*

*and Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 106 (D.D.C. 2008) (holding that default

judgment was appropriate where defendants made no attempt to set aside the clerk's default or to

assert a meritorious defense).  *Cf. Pleitez v. Carney*, 594 F. Supp. 2d 47, 48-49 (D.D.C. 2009)

("defendants cannot escape liability merely by refusing to participate").  Default judgment is an

appropriate method for resolving litigation and protecting a diligent plaintiff "when the

adversary process has been halted because of an essentially unresponsive party."  *Cf. Jackson v.*

*Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).  *Cf. Mutual Funds Investment Litigation*, 590 F.

Supp. 2d 741, 758 (D. Md. 2008) (holding that the ultimate sanction of default judgment was

warranted where defendants' failure to respond to communications from plaintiffs' counsel and

oppose plaintiffs' motion for default constituted a "a pattern of indifference and disrespect to the

authority of the court").

    In short, a party fails to "otherwise defend" for purposes of Rule 55 by effectively

signaling its intention to cease participating in its own defense, even after filing an answer.[4]  *See*

*The City of New York v. Mickalis Pawn Shop, LLC*, 2011 WL 1663427, at *11-12 (2d Cir. 2011)

and the cases cited therein.  Here, Defendant Swier's complete indifference to his obligations as

a *pro se* defendant cannot become an impediment to the adversary process or to the resolution of

---

[4]The court acknowledges that a party that previously has participated in the action through counsel "must be served with written notice of the application [for default judgment] at least 7 days before the hearing."  Fed. R. Civ. P. 55(b)(2).  Both Highwall and Swier received this notice, and still failed to respond or otherwise appear to protect their interests.  *See* doc. ## 130 and 34.

Plaintiff OTO's claims.  Defendant Swier must bear the consequences of his own inaction.

Accordingly, this court recommends that Rich Swier's Answer (doc. #10) be struck.

A.      Standard of Review

It is well-settled that the default procedure under Rule 55 gives the court a significant

tool for enforcing compliance with the Federal Rules of Civil Procedure, as well as protecting

diligent parties who have acted in compliance with those rules.  *See, e.g., Victoria Secret Stores*

*v. Artco Equipment Co., Inc.*, 194 F. Supp. 2d 704, 717 n.5 (S.D. Ohio 2002) (quoting *Chandler*

*Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81 (N.D. Ill. 1981)).  Consistent with those policy

objectives, "a party's default is deemed to constitute a concession of all well pleaded allegations

of liability, [but] . . . is not considered an admission of damages."  *Cablevision of Southern*

*Conn., Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 282 (D. Conn. 2001) (internal quotation

marks and citation omitted).  *See also Patray v. Northwest Publishing, Inc.*, 931 F. Supp. 865,

869 (S.D. Ga. 1996) ("allegations of the complaint are to be accepted as true, except those

relating to the amount of damages") (citation omitted); *Kelley v. Carr*, 567 F. Supp. 831, 841

(W.D. Mich.1983) ("A default judgment on well-pleaded allegations establishes only defendant's

liability; plaintiff must still establish the extent of damages.") (citations omitted).

While the court should accept the plaintiff's well-pled factual allegations as true, a

defendant's default does not guarantee a judgment in favor of the moving party.  *See, e.g.,*

*Jackson v. Correctional Corporation of America*, 564 F. Supp. 2d 22, 26-27 (D.D.C. 2008)

(noting that a plaintiff is entitled to a default judgment only if the complaint states a claim for

relief) and cases cited therein.  *See also Nishimatsu Construction Co., Ltd. v. Houston National*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("a default is not treated as an absolute confession by

the defendant of his liability and of the plaintiff's right to recover;" noting that under Rule 55, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law"); *Di Marco Constructors, LLC v. Sinacola, Inc.*, 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) ("judgment against a defaulting party should be granted only after careful examination of the moving party's claim by the district court . . . a defendant's default does not itself warrant a court in entering a default judgment because there must be a sufficient basis in the pleadings for the judgment entered") (quoting *Bianco v. Seaway Industrial Services, Inc.*, 2004 WL 912916, at *1 (W.D.N.Y. 2004)); *United States v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (even after entry of default, "a plaintiff must nevertheless establish that on the law it is entitled to the relief it seeks, given the facts as established by the default").

"Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded." 10 Federal Prac. & Proc. Civil 3d § 2688 at 63 (1998).  The trial judge, sitting without a jury, has considerable latitude in determining the amount of the damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir.1993).  "To award damages [under Rule 55(b)(2)], it is not necessary for a court to hold a hearing; instead a court may rely upon affidavits and documentary evidence." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008).

In order to fulfill its' obligation to ensure that damages are appropriately awarded, the court must do more than merely accept at face value the movant's statement of damages.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (citations omitted).  *Cf. Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008) (for purposes of Rule 55(b)(2), "[u]nliquidated and punitive damages . . . require 'proving

up' at an evidentiary hearing or through other means") (citing *Dundee v. Cement Co. v. Howard*

*Pipe & Concrete Products, Inc.*, 722, F.2d 1319, 1323-24 (9th Cir. 1983)).  "A plaintiff cannot

satisfy the certainty requirement simply by requesting a specific amount.  He or she must also

establish that the amount requested is reasonable under the circumstances."  *Hennecke, Inc. v.*

*Advanced Building Composites, LLC*, 2010 WL 2464842, at *2 (D. Kan. 2010).[5]

> The outer bounds of recovery allowable are of course measured by the principle
> of proximate cause. The default judgment did not give [plaintiff] a blank check to
> recover from [defendant] any losses it had ever suffered from whatever source.  It
> could only recover those damages arising from the acts and injuries pleaded and
> in this sense it was [plaintiff's] burden to show "proximate cause."  On the other
> hand, there was no burden on [plaintiff] to show that any of [defendant's] acts
> caused the well-pleaded injuries, except as we have indicated that it had to for the
> purpose of establishing the extent of the injury caused [plaintiff], in dollars and
> cents.

*Cablevision of Southern Connecticut, Limited Partnership v. Smith*, 141 F. Supp. 2d at 282

(internal quotation marks and citation omitted).

B.      *Plaintiff's Claims Against Highwall Technologies, LLC and Swier*

Plaintiff seeks default judgment and damages on the following claims:  copyright

infringement (against Highwall and Swier); breach of contract (against Highwall); breach of the

implied covenant of good faith and fair dealing (against Highwall); and fraud (against Highwall

---

[5]While a plaintiff cannot recover damages that are speculative, an injured party is not
required to prove damages with absolute certainty.  *See, e.g.,. Ripple Resort Media, Inc. v.
Skiview Corp*, 2008 WL 4678518, at *5  (D. Colo. 2008), *amended in part on other grounds,*
2009 WL 485172 (D. Colo. 2009); *Telex Corp. v. International Business Machines Corp.*, 367 F.
Supp. 258, 349 (N.D. Okl. 1973), *judgment rev'd on other grounds,* 510 F.2d 894 (10th Cir.
1975).  *See also Denny Constr., Inc. v. City & County of Denver,* 199 P.3d 742, 749 (Colo. 2009)
(noting that a plaintiff is not barred from recovering damages because the amount of loss was not
proved with mathematical certainty).

and Swier).[6]  For purposes of this Recommendation, the following facts are derived from

Plaintiff's Complaint, the exhibits appended to OTO's Motion for Judgment and the testimony

and exhibits presented by Plaintiff during the hearing on April 4, 2011.  In addition, the court has

taken judicial notice of the documents in the court's file.

      1.     <u>Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair</u>
<u>Dealing (Against Defendant Highwall)</u>

To establish a *prima facie* case for breach of contract, Plaintiff OTO must show:  (1) it

entered into a contract with Highwall Technologies, LLC; (2) performance by OTO; (3) a failure

to perform on the part of Highwall; and (4) resulting damages to OTO.  *See Saturn Systems, Inc.*

*v. Militare,* __ P.3d __, 2011 WL 543759, at *13 (Colo. App. 2011).  Colorado law also

recognizes that every contract includes an implied duty of good faith and fair dealing.  *See, e.g.,*

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (noting that "[t]he good faith

performance doctrine is generally used to effectuate the intentions of the parties or to honor their

reasonable expectations").  "The general measure of damages in breach of contract cases is that

sum that places the non-defaulting party in the position the party would have enjoyed had the

breach not occurred."  *Smith v. Hoyer*, 697 P.2d 761, 765 (Colo. App. 1984).

For purposes of these claims, the court finds the following facts.  Prior to March 2005,

OTO created and designed its "Wi-Fi Defense 2.0" software (hereafter "OTO software") to

provide security to laptop and mobile computers, as well as Wi-Fi networks, from unauthorized

intrusions.  This software was developed by Todd Rogers, who also was a co-founder of OTO.

Plaintiff registered a copyright in the OTO software on July 7, 2008.

---

      [6]Plaintiff OTO has not moved for default judgment on its fifth claim for relief (unfair
competition and false designation of origin) and sixth claim for relief (unjust enrichment).

On or about March 15, 2005, Plaintiff entered into a Software Private Label License Agreement (hereinafter the "License Agreement") with Highwall Technologies, LLC, pursuant to which Defendant Highwall was designated a non-exclusive reseller of the OTO software product. *See* Exhibit A to the Affidavit of Chris Basham (doc. #127-2), attached to the pending Motion for Judgment.  Highwall was permitted to sell the OTO software under its own brand name - either Highwall Personal or Highwall  Endpoint - in return for royalty payments set at 75% of revenues generated through sales of the  product during each calendar year. *Id* at ¶¶ 2.1 and 6.1.  While Highwall was obligated to "make its best efforts" to sell the OTO software to its existing and new clients, the License Agreement specifically acknowledged that the "parties are independent contractors" and not any employee, agent or legal representative of the other. *Id.* at ¶ 12.5.  In the event of a dispute arising out of or in connection with the License Agreement, the prevailing party was entitled to recover reasonable expenses, costs and attorneys' fees, in addition to all other appropriate relief. *Id.* at ¶ 12.4.  The License Agreement also included a "LIMITATION OF LIABILITY" clause stating that

> EXCEPT FOR A CLAIM OF INDEMNIFICATION UNDER SECTION 9, NEITHER PARTY SHALL BE LIABLE FOR (I) ANY INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OR (II) ANY AMOUNT GREATER THAN THE AMOUNT PAID TO THAT PARTY UNDER THIS AGREEMENT.  THIS LIMITATION OF LIABILITY WILL APPLY REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT OR TORT, INCLUDING NEGLIGENCE, OR ANY LOSS OF REVENUE, DATA OR PROFITS, AND INDEPENDENT OF ANY FAILURE OF ESSENTIAL PURPOSE OF THE LIMITED WARRANTY AND REMEDIES PROVIDED HEREUNDER.  THIS DISCLAIMER SHALL APPLY WHETHER OR NOT THE OTHER PARTY HAS BEEN APPRISED OF THE POSSIBILITY OF SUCH DAMAGES.

*Id.* at ¶ 10.1.  All rights and licenses granted to Highwall would revert to OTO upon termination of the License Agreement. *Id.* at ¶ 7.4.

11

On or about December 14, 2005, Highwall executed a Purchase Order Agreement with the FDIC, under which the FDIC agreed to purchase 3,500 copies of OTO software under Highwall's private-label name, "Highwall Personal." *See* Affidavit of Chris Basham (doc. #127-2), at ¶ 14.  Under the terms of the Purchase Order Agreement, the FDIC was obligated to pay Highwall $98,000.  *Id.* at ¶ 19.  However, Rich Swier falsely represented to OTO that the FDIC only purchased $20,000 worth of copies of the OTO Software.  It is undisputed that OTO and Chris Basham never saw the actual FDIC purchase order.

In July 2006, OTO raised questions concerning the FDIC transaction.  In an email dated July 11, 2006, OTO's acting counsel suggested his client was "owed a substantial amount of money" and was "counting on [Highwall] to make things right."  In a follow-up email on July 11, 2006, OTO's counsel asked that Highwall "furnish the license agreement for the server software and program descriptions and evidence that the license fee for your server software license fee to the FDIC was $78K as you stated in your email."  Yet again, on July 12, 2006, counsel for OTO asked Mr. Swier to provide documentation supporting his assertions regarding the FDIC transaction, as well as "[x]erozed copies of all invoices sent to end users of OTO software whom Highwall licensed."  *See* Order and Recommendation on Pending Motions (doc. #101), at 5-6.

As the FDIC dispute continued to fester, OTO's outside attorney noted in an August 29, 2006 letter to Highwall's counsel that Highwall

> does not refer to or provide a single document signed on or on behalf of FDIC that mentions any service or product other than the items described in the purchase order.  Further, OTO has reason to believe that no person who was actively involved in the transaction will corroborate Highwall's contention that any services or products other than those reflected in the purchase order were performed or supplied. . . .

*Id.* at 6.

Highwall's outside counsel responded on September 5, 2006, saying that his client was "contacting the FDIC in order to secure a letter confirming all products and services received for which Highwall was paid fees in addition to the cost of the OTO software." In the same letter, Highwall's attorney asked that OTO "refrain from taking any precipitous and unjustified action until I have a reasonable opportunity to review that documentation and deliver it to you which I intend to do promptly upon my return to the office [on September 4, 2006]." When Highwall's promised documentation failed to materialize, OTO's outside counsel warned on September 19, 2006 that "[i]f I do not receive supporting documentation by 4:00 p.m. Houston time tomorrow, I will assume none exists, and will proceed accordingly." Highwall's attorney wrote again on September 20, 2006, assuring OTO of Highwall's "ongoing efforts to address [OTO's] concern" and promising that 'Highwall will continue its efforts to provide the referenced documentation." No such documentation ever was produced. *Id.* at 6-7.

Had Highwall complied with its royalty obligations under the License Agreement, OTO should have received a royalty payment of $73,500, rather than the $22,500 in royalties actually paid by Highwall. Plaintiff suffered damages of $51,000 as a result of Highwall's breach. *See* Affidavit of Chris Basham (doc. #127-1) at ¶¶ 13-19. As part of its claim for breach of contract, Plaintiff also presented evidence, in the form of an unpaid invoice, showing that Defendant Highwall owed OTO $2,874.00 in royalties for software sold to ASG in or about April 2006. *See* Exhibit D (doc. #127-5) attached to Plaintiff's Motion for Judgment. I conclude that Plaintiff also should recover this amount as damages under its contract claims.

The court will decline, however, to award the $12,000 that OTO attributes to "lost

royalties on the FDIC maintenance contract" or the $93,000 in "lost royalties" that Plaintiff

attributes to the "probabilities of deals in the sales pipeline that did not occur because of

MobileSecure's acquisition of Highwall." *See* Affidavit of Chris Basham (doc. #127-1), at ¶19.

Based upon the evidence presented by Plaintiff, I conclude these amounts are simply too

speculative and not supported by sufficient evidence.

At the damages hearing on April 4, 2011, Plaintiff offered an Exhibit O to support its

claim for lost royalties on the FDIC maintenance contract.  On closer examination, Exhibit O

consists of two internal MobileSecure e-mails addressing an inquiry from the FDIC's vendor

about a possible maintenance contract.  I conclude this tentative inquiry does not justify an

award of damages.  *Cf. Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d at 196 (under

Rule 55(b)(2), the "court may not rubber-stamp the non-defaulting party's damages, but rather

must ensure there is a basis for the damages that are sought").  Moreover, when OTO

affirmatively terminated the License Agreement with Highwall on September 26, 20006, it was

fully aware of the software purchase by the FDIC.  Simple logic suggests that OTO could have

independently pursued a maintenance contract with the FDIC.  *Cf. Westec Construction

Management Co. V. Postle Enterprise I, Inc.*, 68 P.3d 529, 532 (Colo. App. 2002) (noting that

the doctrine of failure to mitigate damages applies when the plaintiff fails to exercise reasonable

and diligent efforts to minimize or lessen damages occasioned by the defendant's breach of

contract).

Plaintiff also seeks as contract damages "the amount of $93,000, which Mr. Basham

testified was based on anticipated revenues that were in the pipeline in August of 2006 when

Highwall Technologies sold that pipeline of business to MobileSecure." *See* Plaintiff's

14

Memorandum Brief on Damages (doc. #138) at 4-5.  In support of this amount, Mr. Basham

referred to an August 16, 2006 e-mail from Highwall to MobileSecure.  This e-mail from Jon

Witte is captioned "New Master Forecast" and reads in pertinent part, "Let me know if this is

better.  I still have some other thoughts on this but it is a start."  *See* Exhibit M and related

spreadsheet introduced by Plaintiff during the hearing on April 4, 2011.  I find this e-mail too

tentative to form the basis for Plaintiff's requested royalty damages.  Ironically, Plaintiff OTO is

seeking damages based, in part, upon its assertion that Highwall and Swier were engaged in

deceptive conduct, yet Plaintiff asks the court to place confidence in Mr. Witte's unsubstantiated

projections of future sales.  Rule 55(b)(2) requires more than a leap of faith.  *Cf. Denny*

*Construction, Inc. v. City and County of Denver*, 199 P.3d 742, 746 (Colo. 2009) (holding that

"lost profits are recoverable only if they be proven with reasonable certainty;" "a plaintiff

seeking future damages must provide the trier of fact with '(1) proof of the fact that damages will

accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact

to compute a fair approximation of the loss'"); *Acoustic Marketing Research, Inc. v. Technics*

*LLC*, 198 P.3d 96, 99 (Colo. 2008) (holding that prospective royalties can be awarded "[w]here

there is sufficient reliable evidence royalties would have accrued but for the defendant's

breach").  In the absence of reliable evidence, I can not include these amounts in my

recommended damages.

Weighing the evidence available to the court and applying the applicable Rule 55(b)(2)

standard, I conclude that Plaintiff OTO has established a *prima facie* case for breach of contract

by Highwall Technologies, LLC and recommend that default judgment be entered in favor of

Plaintiff OTO on its contract claims.  This court further finds that Plaintiff OTO has established,

with reasonable certainty, contract damages in the amount of $53,875, plus interest in the amount of $23,936 (calculated at 8% through December of 2010), for a total of $77,811. I further find under section 12.4 of the License Agreement that Plaintiff OTO is entitled to recover reasonable expenses, costs and attorney's fees in connection with the contract dispute with Highwall. Mr. Bornstein, OTO's counsel, has submitted an affidavit indicating that his net attorney's fees as of April 13, 2011 are $69,734. Given the protracted nature of this litigation and the court's knowledge of Mr. Bornstein's level of experience, I find the requested fees to be reasonable and recommend that they be included in any final judgment.

2.   Copyright Infringement (Against Defendants Highwall and Swier)

The Complaint alleges that Plaintiff's software is the subject of United States Copyright Office registration TX0006852241 and that OTO has had a copyright in the subject software since its creation in or about March 2005. *See* Complaint (doc. #1) at ¶¶10, 24 and 25. The Complaint further avers that "Defendants had access and the opportunity to copy OTO Software," that "Highwall made a copy or copies of OTO Software for sale and transfer to MobileSecure," and that "OTO did not give Highwall permission to copy, create derivatives of, . . . publicly distribute or otherwise exercise any of the exclusive rights of a copyright owner with respect to OTO Software outside of the specific terms and conditions contained in the License Agreement." *Id.* at ¶¶ 28 and 30. Finally, OTO has alleged that "[w]ithout Plaintiff's authorization, Defendants Highwall [and] Swier . . . made copies of, created derivatives of, . . . and publicly distributed OTO Software without OTO's permission and authorized others to do the same." *Id.* at ¶ 32. For purposes of the instant motion, the court must accept these allegations as true.

Drawing on the findings of fact set forth in my April 6, 2010 Order and Recommendation, there is evidence to show that in June or July of 2006, Defendant Swier met with MobileSecure's President, Duncan Mackay, to negotiate the sale of Highwall Technologies, LLC.  In the course of those discussions, Mackay learned that Highwall did not own the OTO software incorporated in Highwall Endpoint.  It was understood that the OTO software would not be included in the MobileSecure acquisition.  Swier purportedly told Mackay that Highwall had terminated the License Agreement with OTO in June 2006 and was planning to replace the OTO product.  *See* Order and Recommendation on Pending Motions (doc. #101), at 9.

On June 21, 2006, Swier, on behalf of Highwall Technologies, LLC, executed a Software Development and Consulting Agreement with Excellone.  Under the terms of that agreement, Excellone was to "perform such consulting, advisory, software architectural design, implementation, and testing services to and for [Highwall] as requested by [Highwall]."  The agreement further stated that Excellone was "assign[ing], and transferr[ing] to [Highwall], [its] successors and assigns, the entire right, title and interest in and to the copyright in the software that is developed on [its] behalf."  *Id.*

MobileSecure's acquisition of Highwall closed on August 2, 2006.  Following the acquisition, Highwall became a 40% stockholder of MobileSecure and Rich Swier joined MobileSecure's board of directors.  *Id.*

On September 26, 2006, OTO's counsel sent a letter to Highwall's attorney and Duncan Mackay of MobileSecure, Inc.  In this letter, OTO's counsel acknowledged MobileSecure's recent acquisition of Highwall and Mr. Swier's new position as a MobileSecure employee.  In the same letter, OTO noted that MobileSecure's website seemed to be "actively marketing the

software product that is the subject of the March 2005 Software Private Label License

Agreement between OTO Software, Inc. and Highwall Technologies, LLC, leading OTO to

conclude that MobileSecure now believes that it has assumed Highwall's rights and obligations

under the Agreement."  Counsel concluded his letter by stating

> As Highwall knows, Highwall has refused for months now to provide certain
> requested information regarding its sales of the product, and has breached its
> obligations under Section 6 of the Agreement.  Therefore, pursuant to Article 7.2
> of the Agreement, OTO hereby provides written notification of its termination of
> the Agreement, effective immediately.[7]

*Id.* at 7.

In support of its Motion for Judgment, Plaintiff OTO has proffered an affidavit from

Todd Rogers, the creator of the OTO Software program at issue in this case.  *See* Affidavit of

Todd Rogers (doc. #127-7).  After identifying a number of elements within the Exellone product

that are exact copies of his software program, Mr. Rogers concludes that the OnEdge product is

an infringing copy of the OTO software.  Mr. Roger's opinion stands unrebutted by Defendants

Highwall and Swier.

Plaintiff's copyright infringement claim against Highwall and Swier is based upon OTO

contention that Highwall's acquisition by MobileSecure depended upon Swier's ability to obtain

a copy of the OTO software.  Certainly by July 2006, Swier knew that OTO was questioning

Highwall's reported royalties from the FDIC transaction and knew that parties' long-term

relationship was in serious doubt.  MobileSecure also had informed Swier that the proposed

---

[7]Under the terms of the License Agreement, in the event of a breach of any material
provision, the non-breaching party had the right to "terminate this Agreement immediately by
giving the breaching party written notice thereof."  *See* Exhibit A at ¶ 7.2, attached to the
Affidavit of Chris Basham (doc. #127-2).

acquisition price would have to change if the OTO software was not included.  *See* Order and Recommendation on Pending Motions (doc. #101), at 8.  Plaintiff OTO contends that Swier, "in order to sell his company to MobileSecure, caused to be created a derivative copy of the software by an offshore company in India called Excellone in violation of the copyright, and then sold this pirated version of the software to MobileSecure in an asset sale and merger valued at $1.1 million."  Plaintiff also contends that "Swier, acting as an agent of MobileSecure, caused this infringing copy of OTO software to be publicly displayed for sale on the internet using MobileSecure's internet website."  *See* Plaintiff's Motion for Judgment, at ¶¶ 8 and 10.

Section 106 of the Copyright Act grants the copyright owner the exclusive rights to reproduce the copyrighted work and prepare derivative works.[8]  *See* 17 U.S.C. § 106.  *Cf. Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993).  Nothing in the License Agreement permitted Highwall to make derivative works.  However, to be actionable as copyright infringement, a derivative work must have been substantially copied from the preexisting work, *i.e.,* must incorporate a portion of and be substantially similar to the copyrighted work.  *Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1235 n. 4 (D. Wy. 2002).

Thus, to prevail on its copyright infringement claim against Defendants Highwall and Swier, Plaintiff OTO would have to show:  (1) that it owns a valid copyright; and (2) that the defendants' derivative work was created by copying protectable elements of the copyrighted work.  *See Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009).  A party may establish

---

[8]"A 'derivative work' is defined as a 'work based upon one or more preexisting works' to which original materials are newly added."  *Kindergartners Count,Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1222 (D. Kan. 2033) (citing 17 U.S.C. § 101).

copyright infringement "either by providing direct evidence of copying or by providing indirect evidence of copying through showing (1) access to the original work, and (2) substantial similarity between the original work and the allegedly infringing work." *Cf. Kohus v. Mariol*, 328 F.3d 848, 854 (6th Cir. 2003). "Ultimately, to prove factual copying, the plaintiff must come forward with sufficient evidence that a reasonable factfinder, taking together the evidence of access and the similarities between the programs, could find that the second work was copied from the first." *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d at 833. "All persons and corporations who participate in, exercise control over, or benefit from [a copyright infringement] are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985).

In my August 6, 2010 Order and Recommendation, I concluded that Plaintiff should be permitted to proceed to trial on its claim for copyright infringement against MobileSecure after finding genuine issues of material facts between those parties as to that claim.[9] The default against Defendants Highwall and Swier, however, puts the copyright infringement claim against them in a very different light.

---

[9] Judge Brimmer, in his Order of September 27, 2010 (doc. #117), specifically "declined to reach the substance of plaintiff's copyright claim because there are serious questions regarding whether the Court could provide any relief even if plaintiff were to succeed on its claim." Accordingly, my August 6, 2010 Order and Recommendation cannot constitute the law of the case because it was not adopted by Judge Brimmer and did not form the basis for MobileSecure's dismissal. *Cf. Scheafnocker v. Commissioner of Internal Revenue Service*, 2011 WL 1467198, at *3 (3rd Cir. 2011) ("When a magistrate judge has been directed by a district court to . . . issue a report and recommendation, such findings do not carry the force of law until accepted by the district court."); *Farr v. Anderson, CUS*, 37 Fed. Appx. 330, at *1 (9th Cir. 2002) (holding that a magistrate judge's report and recommendation did not constitute the law of the case where the report and recommendation was never adopted by the district court).

> "[O]nce a default has been entered and entry of judgment pursuant to the default is sought, the function of the trial court is not to weigh conflicting evidence; rather the court must make the sole determination whether the allegations of the party in whose favor the default has been entered are susceptible of proof. . . . [G]iven conflicting but legitimate evidence on both sides, the court is bound to enter judgment for the party in whose favor the default has been entered.

*In re Consolidated Pretrial Proceedings in Air West Securities Litigation*, 436 F. Supp. 1281, 1286 (N.D. Cal. 1977).  Having carefully considered the well-pled allegations in the Complaint, the evidence presented in support of Plaintiff's Motion for Judgment and the information contained in the entire court file, I find that OTO's copyright infringement claim against Highwall and Swier is susceptible of proof based upon evidence establishing Plaintiff's undisputed status as the copyright holder and Defendant Swier's commission of a derivative work created by copying protectable elements of the copyrighted work.

Section 504(a) of the Copyright Act provides that an infringer is liable for either statutory damages or the copyright owner's actual damages and any additional profits of the infringer as provided in § 504(b).  The plain language of § 504(b) provides that the infringer's "profits" are distinct from the copyright owner's "actual damages," and the copyright owner is permitted to recover any profits that are attributable to the infringement so long as those profits are not duplicative of actual damages.  *See, e.g., Johnson v. Jones*, 921 F. Supp. 1573, 1586 (E.D. Mich 1996), *aff'd in part, rev'd in part on other grounds, and remanded by* 149 F.3d 494 (6th Cir. 1998).  *See also U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 781 F. Supp. 412, 413 (M.D.N.C. 1991) (allowing the copyright owner to recover profits attributable to the infringement ensures that the infringer is not able to retain some benefit from their wrongful conduct that is not fully taken into account in awarding actual damages).

To recover damages based upon the infringer's profits, a plaintiff must present some

proof that the infringer's profits were attributable to the use of the copyrighted material.  *Cf.*

*Iconbazaar, LLC v. America Online, Inc.*, 378 F. Supp. 2d 592, 594 (M.D. N.C. 2005).  Section

504(b) only requires the copyright holder to present proof the infringer's "gross revenue."  17

U.S.C. § 504(b).  The burden of proof then passes to the infringer to prove his "deductible

expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*

*See also Hamil America v. GFI*, 193 F.3d 92, 104 (2d Cir. 1999) (an "infringer's profits are

calculated as the gross sales of infringing goods minus the costs that the infringer proves are

attributable to the production and sale of those goods").  In this case, Defendants' default and

failure to challenge Plaintiff OTO's Motion for Judgment necessarily means that Highwall and

Swier have not sustained their burden of proof under § 504(b).  The consequence of that failure

must necessarily inure to Plaintiff's benefit.[10]

The undisputed evidence shows that Swier commissioned the unauthorized derivative

work from Excellone as a necessary precursor to MobileSecure's acquisition of Highwall.  That

sale and merger was valued at $1.1 million.  I find that Plaintiff has presented sufficient evidence

to establish a causal nexus between the creation of the infringing derivative work and the

subsequent merger with MobileSecure.  *Cf. Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)

---

[10]Plaintiff's Memorandum Brief on Damages (doc. #138) purports to claim "actual damages" for copyright infringement based upon the sale of an infringing derivative work to MobileSecure.  However, Judge Brimmer's Order of September 27, 2010 is the law of the case on the question of OTO's right to statutory damages and actual damages on its claim for copyright infringement.  In that Order, Judge Brimmer noted that "[t]he Court has already granted MobileSecure summary judgment as to plaintiff's request for statutory damages, and plaintiff conceded in its response to MobileSecure's motion that it 'cannot prove actual damages or that MobileSecure generated any revenue from sales."  Consequently, Judge Brimmer had no reason to address and made no findings as to the discrete category of "profits" that Highwall and/or Swier may have derived from their infringing conduct.

(holding that a copyright holder seeking to recover indirect profits damages "must proffer some

evidence . . . [that] the infringement at least partially caused the profits that the infringer

generated as a result of the infringement").   For purposes of calculating MobileSecure's profits

under §504(b), I will incorporate the same formula that the parties utilized in calculating

royalties under the License Agreement, and measure Highwall's profits as 75% of the $1.1

million purchase price, or $832,000.   Accordingly, I recommend that judgment be entered in

Plaintiff's favor as to the first claim for relief and recommend an award of damages under that

claim in the amount of $832,000.[11]

     3.    <u>Fraud (Against Defendants Highwall and Swier)</u>

In moving for default judgment, Plaintiff OTO contends that Defendants Highwall and

Swier made fraudulent misrepresentations relating to the FDIC transaction and fraudulently

concealed the sale of "pirated and infringing software to MobileSecure."  *See* Plaintiff's

Memorandum Brief on Damages for Default Judgment (doc. # 138), at 5.  The Complaint

specifically alleges that Swier, as president of Highwall Technologies, LLC, intentionally

---

[11]I am not disregarding the Limitation of Liability provision contained in the parties' License Agreement, which seemly precludes an award of profits to OTO.  Colorado case law holds, however, that a limitation of liability clause is against public policy to the extent that it would shield an offending party from its own willful or wanton conduct. *Cf. United States Fire Insurance Co. v. Sonitrol Management Corp.*, 192 P.3d 543, 548 (Colo. App. 2008).  To establish a willful violation of the Copyright Act, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Caffey v. Cook*, 409 F. Supp. 2d 484, 504 (S.D.N.Y. 2006).  In this case, there is evidence in the record, reinforced by Defendants' default, to show that Defendant Swier purposely set out to duplicate the OTO software in order to maximize the acquisition price paid by MobileSecure. *Cf. N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that willfulness need not be proved directly, but may be inferred from the defendant's conduct).  Based upon that finding, the Limitation of Liability clause would not preclude Plaintiff's recovery of profits derived from Defendants' infringing activities.

misrepresented the number of copies of OTO software sold to the FDIC, and further concealed and failed to disclose that he made a copy or copies of OTO software and then sold to MobileSecure ownership rights in an asset Highwall did not own. *See* Complaint (doc. # 1) at ¶¶ 30, 53 and 54. As noted previously, Rule 55(b)(2) does not permit the court to enter a judgment on claims that are barred as a matter of law. *Cf. United States v. Ponte*, 246 F. Supp. 2d at 76. That prohibition is fatal to Plaintiff OTO's fraud claim against Defendants Swier and Highwall.

Colorado law recognizes the "economic loss rule," which provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 627 (Colo. App. 2009) (noting, however, that the economic loss rule would not trump a statutory remedy). "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract and a tort action will not lie. A breach of duty *arising independently* of any contract duties between the parties, however, may support a tort action." *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1261 (Colo. 2000) (emphasis in original). To fall outside the economic loss rule, "two conditions must be met: '[f]irst, the duty must arise from a source other than the relevant contract[;] [s]econd, the duty must not be a duty also imposed by the contract.'" *Registry Systems International, Ltd. v. Hamm*, 2010 WL 326327, at *10 (D. Colo. 2010) (Brimmer, J.). "[T]he applicability of the economic loss rule is a question of law." *Id.*

In this case, Defendants' duty to provide truthful information about software sales arose from obligations established in the License Agreement. Defendants' alleged fraud does not concern a matter (sales of OTO Software) that could be considered extrinsic to the parties'

contract.  *Cf. Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289 (Colo. App.

2009) ("Where the alleged fraud arises from duties implicated by a party's performance of

contractual terms, the claim is barred by the economic loss rule.").

Even if Plaintiff's fraudulent concealment claim was not barred by the economic loss

rule, relief under this theory would be precluded by pleading deficiencies in OTO's Complaint.

To successfully assert a claim for fraudulent concealment, a plaintiff must provide five elements:

> (1) the defendant's concealment of a material existing fact that in equity or good
> conscience should be disclosed, (2) the defendant's knowledge that the fact is
> being concealed, (3) the plaintiff's ignorance of the fact, (4) the defendant's intent
> that the plaintiff act on the concealed fact, and (5) the plaintiff's action on the
> concealment resulting in damage.

*Vaske v. DuCharme, McMillen & Associates, Inc.*, 757 F. Supp. 1158, 1164 (D. Colo. 1990).

Under Colorado law, a plaintiff asserting a claim for fraudulent concealment or non-

disclosure must show as a matter of law that the defendant had a duty to disclose the

information.  *Med Safe Northwest, Inc. v. Medvial, Inc.*, 1 Fed. Appx. 795, 801 (10th Cir. 2001),

citing *Berger v. Security Pacific Information Systems, Inc.*, 795 P.2d 1380, 1383 (Colo. App.

1990).  It is generally recognized that "a person has a duty to disclose to another with whom he

deals facts that 'in equity and good conscience' should be disclosed."  *See, e.g., Berger v.

Security Pacific Information Systems, Inc.*, 795 P.2d at 1383.  Alternatively, a duty to disclose

may arise where a fiduciary relationship exists between the parties.  *See, e.g., Mallon Oil Co. v.

Bowen/Edwards Associates, Inc.*, 965 P.2d 105, 115 (Colo. 1998).

Here, the License Agreement expressly stated that the "parties are independent

contractors" and not any employee, agent or legal representative of the other.  However, a

fiduciary relationship does not arise simply because the parties are involved in an arms-length

commercial relationship.  *See, e.g., Portney v. CIBA Vison Corp.*, 2008 WL 5505517, at *4 (C.D. Cal. 2008) (holding that a party's obligation to pay royalties under a licensing agreement did not serve to elevate a contractual relationship into a fiduciary one); *Atlantis Information Technology GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (finding that no fiduciary relationship existed between the plaintiff-licensor and the defendant-licensee; defendant was not a fiduciary simply because it had superior knowledge of its licensing activity and was entrusted with distribution of the plaintiff's product); *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *5 (S.D.N.Y. 2003) ("Entering into a conventional business relationship generally does not create a fiduciary relationship."); *Flight Concepts Limited Partnership v. Boeing Co.*, 819 F. Supp. 1535, 1546-1547 (D. Kan. 1993) ((holding that a license agreement between a patent holder and a licensee did not create a fiduciary relationship where the parties were negotiating at arms length).[12]  Plaintiff OTO has not come forward with well-pled factual allegations that would establish a duty to disclose on the part of Highwall or Defendant Swier. In the absence of such a duty, Plaintiff's fraudulent concealment claim must fail as a matter of law.  *Cf. Atlanatis Information Technology GmbH v. CA, Inc.*, 485 F. Supp. 2d at *232-33 (holding that plaintiff-licensor's claim for fraud and fraudulent concealment against defendant-licensee should be dismissed under the economic loss rule).  Accordingly, Plaintiff's Motion for Judgment should be denied to the extent OTO seeks entry of a default judgment on its fourth claim for relief.  Consistent with this Recommendation, I conclude that OTO is not entitled to damages under that claim.

---

[12]This court's own research has not found any Colorado case law that would suggest a license agreement creates a fiduciary relationship between the parties as a matter of law.

**CONCLUSION**

For the foregoing reasons, this court RECOMMENDS that the district court grant in part and deny in part Plaintiff OTO's Motion for Judgment Against Highwall Technologies LLC and Rich Swier.

As to Defendant Highwall Technologies, this court RECOMMENDS that judgment be entered against Defendant Highwall Technologies, LLC as to claim two (breach of contract) and claim 3 (breach of the implied covenant of good faith and fair dealing), and that damages and attorney's fees be awarded under these claims in the amount of $77,811 and $69,734, respectively.  I further RECOMMEND that the district court enter judgment finding Defendant Highwall Technologies, LLC and Defendant Rich Swier jointly and severally liable as to claim one (copyright infringement), in the total amount of $832,000.  Finally, I recommend that Plaintiff's Motion for Judgment be denied to the extent it seeks a default judgment against Defendants Highwall Technologies, LLC and Rich Swier under claim four (fraud).


**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  *See also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  Failure to make timely objections to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a

waiver of the right to appeal.  *See Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 2011 WL 14461 (10th Cir. Jan. 5, 2011) ("the firm waiver rule ordinarily prevents us from reviewing a magistrate judge's ruling if the aggrieved party failed to file proper objections to that ruling in the district court") (citations omitted);  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)").

        DATED this 5th day of July, 2011.

                                        BY THE COURT:


                                         s/Craig B. Shaffer
                                        United States Magistrate Judge